**Denver C. FLETCHER, Appellant,**

v.

**SOUTHERN FARM BUREAU LIFE INSURANCE COMPANY, Appellee.**

No. 84–1828.

United States Court of Appeals, Eighth Circuit.

Submitted March 15, 1985.

Decided March 20, 1985.

Janice O. Williams Wheeler, Arkadelphia, Ark., for appellant.

Laura A. Hensley, Little Rock, Ark., for appellee.

Before McMILLIAN, Circuit Judge, HENLEY, Senior Circuit Judge, and FAGG, Circuit Judge.

PER CURIAM.

Denver C. Fletcher filed suit against his insurer, Southern Farm Bureau Life Insurance Company (the Company), seeking disability benefits for alleged total disability as a result of his exposure to formaldehyde at his place of employment. He later amended his complaint to include a claim for bad faith refusal to pay the proceeds of the policy. The Company filed a motion for physical examination by a physician of the Company's choice. The district court[1] ordered Fletcher to submit to an examination by a physician in Denver, Colorado. Two years later, the examination still had not been conducted. Following a hearing based upon the Company's motion to dismiss, the district court found Fletcher in wilful disobedience of the court's discovery orders and dismissed his complaint with prejudice. Fletcher contends this was an abuse of discretion. We affirm.

Fletcher alleged a disability onset date of August 1, 1979, the same day he terminated his employment with his employer. Pursuant to the Company's request, he was examined by Dr. Kelsy Caplinger in Little Rock, Arkansas. However, the examination could not be completed due to Fletcher's refusal to allow Dr. Caplinger to administer certain allergy tests, and Dr. Caplinger was therefore unable to reach a finding as to Fletcher's disability. Dr. Caplinger recommended he be examined by Dr. John Selner at the Environmental Care Unit in Denver, Colorado. According to Dr. Caplinger, this was the only place where Fletcher could receive appropriate testing.

In July, 1981 the Company notified Fletcher's attorney, Charles Davis, of the necessity of the examination by Dr. Selner. Fletcher filed his complaint in the district court about a month later. Fletcher subsequently refused to go to Colorado and the Company filed a motion to compel the examination pursuant to the contract of insurance and Fed.R.Civ.P. 35. Fletcher responded that the tests would be "life threatening." However, he submitted no medical evidence to support this assertion.

The district court subsequently ordered Fletcher to go to Colorado for the examination. The court specifically warned that it would subject Fletcher to sanctions if he failed to comply with the order.

Fletcher then filed a motion for relief from the order. He submitted an affidavit from Dr. William Rea which stated that a flight to Colorado would cause "exacerbation" of Fletcher's physical problems. However, in May of 1981 Dr. Rea wrote to Fletcher's attorney stating that Fletcher could go to Colorado for examination.[2] The district court found that while the trip could possibly cause a recurrence of symptoms, there was nothing to indicate it would threaten Fletcher's life. The court found Fletcher's refusal to submit to the

---

1. The Honorable Elsijane T. Roy, United States District Judge, Eastern and Western Districts of Arkansas.

2. The letter suggested Fletcher see Dr. Ken Gerdes in Denver, Colorado.

examination unreasonable and denied relief from the prior order.

One week later Fletcher dismissed Davis as his attorney and in March, 1982 Fletcher's second attorney, Cliff Jackson, entered his appearance. Further negotiations ensued for the next several months in an attempt to set up a convenient date for the examination. Fletcher indicated he was willing to go to Colorado but insisted his wife accompany him and that the Company pay for her expenses as well as his own. The Company was willing to pay some, but not all, of Mrs. Fletcher's expenses and an agreement was not reached.[3] Fletcher then fired attorney Jackson.

Fletcher then retained Bobby Odom as his attorney. In February of 1983 the parties stipulated that the examination could wait until a decision was reached on Fletcher's pending worker's compensation claim. Fletcher agreed to go to Colorado immediately upon the Company's written request. This was reiterated by Fletcher again in July of 1983 after his worker's compensation claim was denied. Nevertheless, when the Company requested in writing that Fletcher make himself available for the trip in September of 1983, attorney Odom told the Company that Fletcher would only go if all of Mrs. Fletcher's expenses, including lost wages, were paid. The Company refused to pay anything other than her plane fare. Fletcher then dismissed Odom. In its order granting Odom's motion to withdraw, the district court found that Fletcher had violated the court's previous orders to submit to the examination. It cautioned that further dilatory conduct would result in dismissal of the lawsuit.

The court conducted a hearing on the Company's motion to dismiss in November of 1983. At the hearing, Fletcher once again assured the court that he would abide by the court's prior orders. There-

fore, the court withheld ruling on the motion to dismiss pending arrangements to be made for the trip.[4] The court again warned Fletcher that his case would be dismissed if he fired his latest attorneys, Janice Wheeler and Herman Hankins.

Arrangements for the trip to Colorado were made, and Mr. and Mrs. Fletcher were scheduled to leave from the Little Rock Airport on December 5, 1983, over two years after the court initially ordered Fletcher to submit to the examination. Just prior to boarding the plane, however, Fletcher lay down on a bench and Mrs. Fletcher told the ticket agent that Mr. Fletcher would need emergency treatment en route to Colorado. Fletcher told the agent he would not "make it" if he went on the trip. Quite understandably, the agent refused to allow them to board without a physician's release.

The district court subsequently ordered further briefing on the Company's motion to dismiss, and dismissed Fletcher's complaint with prejudice on June 1, 1984. The court stated that despite several warnings Fletcher had not obeyed its orders to submit to the examination. The court noted that a statement of Fletcher's physician which was submitted prior to the December 5 scheduled flight never mentioned Fletcher's inability to travel. The court stated that the circumstances justified a finding that Fletcher had wilfully disobeyed the court's prior orders. It held that the Company's severe prejudice was shown by the fact that the Environmental Care Unit in Denver was now closed and adequate testing could no longer be done because this unit was the only facility in the United States where the appropriate tests could be accomplished. "This plaintiff's behavior has gone beyond what can be tolerated in a court of law. [Fletcher's] wilful disobedi-

---

**3.** Fletcher not only wanted the Company to pay for his expenses, which it had already offered to do, but also to pay for his wife's plane fare, lodging, meals and lost wages. The Company was only willing to pay for Mrs. Fletcher's air fare.

**4.** The court entered an order requiring the Company to provide a description of the proposed examination which was provided several days later. The court also ordered Fletcher to submit an updated statement from his treating physician concerning Fletcher's medical history and status. This was provided by Dr. Rea.

ence to the Court's orders has so prejudiced the defendant that the Court must regretfully dismiss the Complaint." *Fletcher v. Southern Farm Bureau Life Ins. Co.*, No. 81–6074, slip op. at 8 (W.D. Ark. June 1, 1984).

Fletcher contends that the court abused its discretion in dismissing his complaint with prejudice. We agree with Fletcher that "[d]ismissal with prejudice is an extreme sanction and should be used only in cases of willful disobedience of a court order or continued or persistent failure to prosecute a complaint." *Givens v. A.H. Robins Co.*, 751 F.2d 261, 263 (8th Cir.1984); *see Farmers Plant Food, Inc. v. Fisher*, 746 F.2d 451, 452 (8th Cir.1984); *Lorin Corp. v. Goto & Co., Ltd.*, 700 F.2d 1202, 1207–08 (8th Cir.1983). We believe there is sufficient evidence to support the district court's finding that, despite repeated warnings from both the court and counsel, Fletcher wilfully disobeyed the court's orders to submit to the examination in Colorado. The Company was well within its rights in requesting the examination. Both the contract and Arkansas law allow an insurer to request a physical examination of the insured by a physician of the insurer's choosing. *See* Ark.Stat.Ann. § 66–3705(6) (1980).[5] The pattern of Fletcher's conduct over a three year period, including his repeated dismissal of his attorneys whenever they would advise that he must submit to the examination, indicates a persistent and wilful failure to obey the lawful orders of the court. While dismissal with prejudice should only be used as a sanction in exceptional circumstances, "a pattern of intentional delay by the plaintiff is sufficient to warrant such action by the trial court." *Burgs v. Sissel*, 745· F.2d 526, 528 (8th Cir.1984) (per curiam).

Moreover, we are satisfied that Fletcher's refusal to make the trip to Colorado was not based upon his inability to comply with the court's order. *See Laclede Gas Co. v. G.W. Warnecke Corp.*, 604 F.2d 561,

566 (8th Cir.1979). There was no competent evidence that the trip would be life threatening to Fletcher or would otherwise seriously endanger his health. He did not testify that he feared his life would be threatened by the trip. In fact, his only concern was that exposure to exhaust fumes might disorient him and that therefore he needed his wife to accompany him. We agree with the district court that "[i]f the plaintiff had been willing to make the trip to Denver and had only imposed the condition that his wife accompany him, then he would have gone long ago." *Fletcher, supra*, slip op. at 8. The Company's offer to help pay for Mrs. Fletcher's expenses was sufficient to meet its contractual obligations. While Fletcher's treating physician, Dr. Rea, indicated at one point that the trip would cause "exacerbation" of his symptoms, he had previously suggested that Fletcher see a different physician in Denver if further physical examinations were deemed necessary. In addition, the court requested an updated medical report from Dr. Rea just prior to Fletcher's scheduled departure in order to find out whether Dr. Rea considered the proposed trip to be dangerous. Dr. Rea's statement did not mention any inability to travel. We also note that Fletcher was to be admitted to a hospital upon his arrival where he would have received competent medical care twenty-four hours a day. Although the trip might well have caused Fletcher some discomfort, we believe there is adequate support in the record for the district court's conclusion that Fletcher's refusal to go to Colorado was unreasonable.

Finally, there is a reasonable basis for the court's finding of prejudice to the Company as a result of Fletcher's actions. Fletcher's physical condition was the critical issue in the case. Both Doctors Caplinger and Selner indicated that they knew of no other facility or physician in the United States qualified to conduct the types of tests that were necessary for the

---

5. Moreover, Fed.R.Civ.P. 35 empowers the court to order such an examination where good cause has been shown. Fed.R.Civ.P. 37(b)(2)(C) provides that where a party fails to obey a Rule 35 order, his suit may be dismissed.

Company to determine the extent of Fletcher's disability. While Fletcher disputes this, and even though we have serious doubts that the facility in Denver was the *only* place the tests could be done, Fletcher offered no evidence to rebut the court's findings. The Company communicated to Fletcher the substance of the tests which were to be performed. He has had ample opportunity to present evidence that the tests could be performed elsewhere and to suggest alternative locations. Yet he has not done so. It is undisputed that the Denver facility is now closed. The court could properly find that Fletcher's conduct prevented the Company from adequately preparing its defense to his claim. Dismissal is an appropriate sanction where a discovery violation "makes it impossible to determine the factual merits of a claim." *Denton v. Mr. Swiss of Missouri, Inc.,* 564 F.2d 236, 240 (8th Cir.1977).

In sum, we are convinced that the district court "bent over backward" to try to accommodate Fletcher. As the court stated:

> His behavior throughout the pendency of this action indicates that he initially refused to go under any circumstances, but as he passed through one law firm after another and the Court continued to order him to go he began to set conditions on his submission. Finally, when confronted with the Court's warning ... that serious consideration was being given to dismissing the complaint for failure to follow the Court's orders, Fletcher promised the Court and his attorney that 'whatever the Court rules' he would abide by it. He has done no such thing.

*Fletcher, supra,* slip op. at 8.

The trial court was in a much better position to determine whether Fletcher's refusal to obey its orders was based upon a serious and legitimate concern for his own health or whether it was instead a wilful and intentional attempt to delay discovery. We cannot say that the district court

abused its discretion in concluding as it did and dismissing Fletcher's complaint with prejudice.[6] Therefore, its decision is affirmed.

---

6. Fletcher also argues that the district court should have held a second hearing prior to dismissing his complaint. We find no abuse of discretion. Fletcher has not stated what additional evidence he would have submitted and therefore it does not appear he was prejudiced by the lack of a second hearing. The court could properly find that there would be no benefit in holding further proceedings.