**Mark QUASCHNICK, Plaintiff,**

*v.*

**Robert H. JESSEN, M.D., Defendant.**

**No. CIV 86–5129.**

United States District Court, D. South Dakota.

Oct. 21, 1988.

**552**

Robert G. Mines, Hot Springs, S.D., for plaintiff.

William G. Porter, Lonnie R. Braun, Costello, Porter, Hill, Heisterkamp & Bushnell, Rapid City, S.D., for defendant.

## MEMORANDUM OPINION

BOGUE, Senior District Judge.

A pre-trial conference was held on October 19, 1988. Plaintiff was represented by his attorney, Mr. Robert Mines, who was assisted by attorney Andrew B. Reid. Defendant was represented by his attorneys, William G. Porter and Lonnie R. Braun.

Pending at the time of the pre-trial conference were Defendant's September 26, 1988, Motion to Dismiss and Plaintiff's October 12, 1988, Motion for a Ruling, Etc. Although not so stated, Plaintiff's motion is, in effect, to name Dr. Jordan as a new expert and to be allowed to depose him. At the close of the pre-trial conference, the Court denied Plaintiff's motion and cancelled Dr. Jordan's deposition, which Plaintiff had noticed for October 27, 1988. Ruling on Defendant's motion was reserved and the pre-trial conference recessed until further order. The Court ordered a transcript of the pre-trial conference. That transcript will be filed and is incorporated into this Memorandum Opinion by reference.

Defendant moved for dismissal pursuant to FRCP 41(b), which states, in relevant part, that "[f]or failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or any claim against the defendant."

The standard of review of a motion to dismiss is whether or not the Plaintiff has willfully disobeyed a court order or continually or persistently failed to prosecute his complaint. *Fletcher v. Southern Farm Bureau,* 757 F.2d 953 (8th Cir.1985);

*Burgs v. Sissel,* 745 F.2d 526 (8th Cir.1984). Dismissal is a drastic remedy warranted only in exceptional circumstances. *Id.*

The Court has carefully reviewed the record, including the transcript of the January 1988 mistrial, against the standard of willful disobedience or continual or persistent failure to prosecute. The record shows that Plaintiff filed his complaint against Defendants Jessen and Spectrum Emergency Care, Inc. on September 2, 1986. Trial commenced on January 19, 1988. (By time of trial, Defendant Spectrum had been dismissed.) On the third day of trial, Judge Battey granted Defendant's motion for mistrial because Plaintiff was not prepared for trial. Plaintiff had not coordinated his expert witnesses' testimony and had not complied with FRCP 26(e)(1)(B), which requires a party to update his discovery responses regarding expert testimony. The transcript of the mistrial is on file and amply supports Judge Battey's characterization of Plaintiff's case as trial by ambush and panic.

When Judge Battey granted the mistrial, he allowed further discovery for a period of sixty days. He also allowed the naming of new experts, whose names he ordered to be disclosed, and he allowed the taking of depositions of all experts. Judge Battey originally extended discovery for only thirty days stating that he planned "to have this case reset for trial within sixty days." TT, v. 3, p. 46. On Plaintiff's off-the-record request, Judge Battey extended discovery to sixty days and specifically stated that he "would reset the trial within the next thirty days, so that we are taking about a ninety-day parameter." *Id.,* at 48. It is clear that Judge Battey was very charitable in giving Plaintiff another chance to get his case in order and that he planned to re-try the case within ninety days. (On March 29, 1988, Judge Battey set a new trial date of August 29, 1988. There is nothing in the record explaining why trial was not scheduled within ninety days of January 21, 1988, as Judge Battey originally intended.)

On February 17, 1988, Defendant moved for terms against Plaintiff or his counsel

for payment of Defendant's expenses and fees incurred as a result of the mistrial. On April 1, 1988, Defendant's motion was granted and on May 2, 1988, a judgment for terms against Plaintiff's attorney, Mr. Mines, was entered in the amount of $5,235.45. The April 1st Order required the payment of terms as a condition to a new trial.

On May 3, 1988, this case was assigned by Judge Battey to this Court. On May 4, 1988, this Court continued the trial date indefinitely because of Judge Battey's order of no payment of terms, no trial.

By August 1988, Plaintiff still had not paid terms and there had been no activity in the file since the May 4th Order continuing trial. The Court therefore entered its August 2, 1988, Order that the case would be dismissed unless Mr. Mines filed proof, by August 15, 1988, that he had paid terms. Mr. Mines filed such proof on August 3, 1988. On August 15, 1988, the case was set for pre-trial conference on October 19, 1988 and trial on October 31, 1988. (As of October 18, 1988, this case is # 1 on the Court's trial calendar for October 31, 1988. Counsel were informed of this on October 18th.)

On September 1, 1988, Plaintiff wrote Defendant that he was attempting to engage an infectious disease expert. Defendant's Motion to Dismiss, Exhibit A. On September 9, 1988, Plaintiff wrote Defendant that Dr. Colin Jordan was his infectious disease expert. *Id.*, Exhibit B. On September 12, 1988, Defendant wrote Plaintiff objecting to Plaintiff's discovery attempts. Plaintiff's Motion for a Ruling, Etc., Exhibit 2.

On September 26, 1988, Defendant moved to dismiss, based on Plaintiff's violation of Judge Battey's sixty-day discovery order and his fear that Plaintiff's history of unpreparedness and problems with experts was repeating itself on the eve of the second trial.

On October 12, 1988, Plaintiff filed his response to Defendant's motion to dismiss (Letter to Court, Docket # 62) and moved, in effect, to name Dr. Jordan as a new expert and to be allowed to depose him.

(On October 18, 1988, Plaintiff filed notice that he intended to depose Dr. Jordan on October 27, 1988, in Minneapolis, Minnesota. As stated in the first paragraph of this order, Plaintiff's motion was denied and the deposition cancelled by order of the Court.)

The basis of Plaintiff's resistance to dismissal is contained in his attorney's Affidavit and Brief in Support, Etc., attached to his October 12th motion. Plaintiff argues that he spent substantial amounts of time and money in anticipation of having Dr. Jordan testify and that he would therefore suffer significant harm if Dr. Jordan could not testify. Plaintiff also argues that the purpose of the January 1988 mistrial was to provide time for additional discovery, which he is attempting to do, and that purpose would not be fulfilled if his motion was denied.

Plaintiff's Affidavit and Brief in Support, Etc. do not raise the argument he relied on at the pre-trial conference. There Plaintiff argued he thought Judge Battey's sixty-day discovery extention ran from the date the issue of terms was resolved or he paid the terms, whichever was later. If this were true, Plaintiff would have had sixty days from August 3, 1988, which is October 3, 1988, to disclose new experts and complete discovery. Plaintiff did not explain why he missed the alleged October 3rd deadline.

There is nothing in the record to support Plaintiff's argument that he had until October 3rd to complete discovery. On the contrary, the record is clear that Judge Battey extended discovery sixty days from January 21, 1988, which is March 21, 1988. Plaintiff's argument that he thought otherwise is also belied by his failure to make his understanding known to the Court once he received Defendant's September 12, 1988 letter objecting to further discovery and by his failure to argue his understanding in his written response to Defendant's motion to dismiss.

At the pre-trial conference, Plaintiff also mentioned that he was experiencing serious personal problems at the time of the January 1988 mistrial and through the summer

of 1988. The Court does not doubt Plaintiff's word. However, at the pre-trial conference the Court repeatedly asked Plaintiff to explain why his personal problems prevented him from seeking a court order clarifying discovery deadlines or asking the Court for other relief he thought appropriate, given his circumstances. Plaintiff's response that for some time he did not know if he could continue with the case is really no explanation at all.

What is so frustrating about Plaintiff's behavior is that Judge Battey's extention of discovery following the mistrial was extremely generous. Judge Battey did not limit Plaintiff to the experts he called, or planned to call, at the mistrial. Judge Battey completely opened discovery for both parties for sixty days. He gave Plaintiff a chance to start the second trial with a clean slate of new experts, if he so desired, or to rehabilitate the testimony of the experts used at the first trial. Notwithstanding this gift of a second chance, Plaintiff threw it away.

Plaintiff should have updated Defendant immediately on the testimony of any of the experts used at the mistrial whom he planned to call at the second trial, as required by FRCP 26(e)(1)(B). He did not do this. The only update Defendant received is Defendant's Pre-trial Conference Exhibit 1. Plaintiff gave this exhibit to Defendant on October 18, 1988, as an update of Dr. Brown's (one of Plaintiff's experts at the mistrial) report. This exhibit is the sum total of discovery updating Plaintiff provided Defendant. Plaintiff also should have immediately evaluated his need for new experts and then promptly disclosed to Defendant their names and substantive testimony. (Plaintiff's argument at the pre-trial conference that he did not know until he read Judge Battey's April 1, 1988 Order that Dr. Easton would not qualify as an infectious disease expert is contradicted by the transcript of the mistrial. TT., V. 3, *passim*.)

Plaintiff's failure to seize the opportunity to try to make something good of the second trial is saddening. While dismissal is admittedly harsh, it is well warranted here —a classic case for such a sanction.

Additionally, without the rehabilitation of Plaintiff's original experts, or the obtaining of new experts, it is clear that the problem Plaintiff had at the mistrial, of establishing causal connection, still exists and would bring about a substantially similar end result at a second trial as occurred at the mistrial. If Plaintiff were granted an additional expert at this late date, further continuance would necessarily have to be granted to Defendant to defend against the testimony of the new expert. In either event, the treatment of the Defendant would indeed be harsh.

Counsel for Plaintiff has been in the practice of law for many years and is well aware of the need for diligence in the prosecution of a case, and of the possible penalties which can be imposed in the event of the failure to be diligent. *See Ternes v. Knispel*, 374 N.W.2d 879 (N.D.1985). He certainly cannot claim inexperience or surprise.

Upon a thorough review of the record, the Court finds that Plaintiff willfully disobeyed Judge Battey's discovery order that discovery be completed within sixty days of January 21, 1988, and that within that time any new experts were to be disclosed and any depositions taken. The Court also finds that Plaintiff's failure to comply with discovery orders and the rules of civil procedure on discovery of experts is persistent and continuing. Plaintiff has already been given a second chance to prove his case. Given the history of Plaintiff's disregard of discovery orders and the rules of discovery, the Court does not believe any alternative to dismissal, such as a continuance, would be fair to Defendant.

Defendant's Motion to Dismiss will be granted.