AVIONIC COMPANY, Appellant,

v.

GENERAL DYNAMICS
CORPORATION,
Appellee.

No. 91–1095.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 13, 1991.

Decided Feb. 21, 1992.

David Mitchell Harris, St. Louis, Mo., argued, for appellant.

Thomas Edward Douglas, St. Louis, Mo., argued, for appellee.

Before McMILLIAN and JOHN R. GIBSON, Circuit Judges, and HUNTER,* Senior District Judge.

JOHN R. GIBSON, Circuit Judge.

Avionic Company appeals from the district court's[1] dismissal pursuant to Fed. R.Civ.P. 37(b)(2) of Count I of Avionic's suit against General Dynamics Corporation. The district court dismissed Avionic's claim as a sanction for its president's failure to answer deposition questions. Avionic claims this was error because: (1) there was no prior order compelling Avionic's president to answer the deposition questions; (2) the failure was not willful; (3) there was not the requisite prejudice to General Dynamics from the failure to answer the questions; (4) the sanction was disproportionate to the gravity of the failure; and (5) the district court failed to consider whether a lesser sanction would be adequate. We affirm the district court's judgment.

In Count I of its suit, Avionic sought damages pursuant to a consulting agreement under which it assisted General Dynamics in doing business in Greece, particularly in obtaining a contract to sell F–16 fighter aircraft to the Greek government. The consulting agreement contained a clause that would automatically extend the contract's term (and hence, Avionic's right to periodic payments) for three years if,

before the term of the consulting agreement ended, General Dynamics had obtained a contract to sell the F–16s. After various extensions, General Dynamics terminated the consulting agreement, effective December 21, 1983.

Though General Dynamics and the Greek government did not enter a written contract for the F–16s until long after December 21, 1983, Avionic argues that in the arena of foreign military equipment sales, the word "contract" includes the "selection" of a manufacturer's product by the foreign government. Avionic argues that the Greek government's "selection" of the F–16 occurred before December 21, 1983, and that Avionic is therefore entitled to payment for the three-year extended term. General Dynamics argues that a "selection" is not the same as a "contract" and that, at any rate, "selection" of the F–16 did not occur before December 21, 1983. Thus, a key factual issue in the case is whether the Greek government "selected" the F–16 before December 21, 1983.

Avionic's president, retired Greek Air Force General Dimitri Countouris, testified at his initial deposition that the Greek "New Fighter Aircraft" Committee reported in May 1983 that General Dynamics' F–16 was the committee's first choice as the new fighter plane for the Hellenic Air Force. However, Countouris refused to say who on the committee told him of the decision because: "[F]irst of all, that is confidential, according to the Greek laws it is not permitted, if I mention a name, this member of the committee, officer, I don't know, will be in trouble, so I cannot and nobody can force me to mention name."

General Dynamics moved to compel Countouris to answer the question. There is some dispute about what occurred in the discovery conference at which the magistrate judge[2] considered the motion, but Avionic does not dispute the magistrate

---

* The HONORABLE ELMO B. HUNTER, Senior United States District Judge for the Western District of Missouri, sitting by designation.

1. The Honorable George F. Gunn, Jr., United States District Judge for the Eastern District of Missouri.

2. The Honorable Carol E. Jackson, United States Magistrate for the Eastern District of Missouri.

judge's report that she "indicated [her] intention to grant the defendant's motion to compel and to order Countouris to answer the questions upon resumption of his deposition. Counsel for plaintiff represented to the court that, based on his discussions with Countouris, the question would be answered." *Avionic Co. v. General Dynamics Corp.*, No. 88–2030–C, slip op. at 2 (E.D.Mo. June 5, 1990) (magistrate's report and recommendation). The magistrate judge entered an order compelling Countouris to appear in St. Louis to be deposed on April 23, 24, or 25, 1990, *Avionic Co.*, slip op. at 1 (April 16, 1990). Accordingly, he gave his deposition in St. Louis on April 24 and 25, 1990. On April 24, 1990, the magistrate judge entered a written order compelling Countouris to answer the questions, but Avionic's counsel contends that counsel did not receive the order or have notice of it until after the deposition was over on April 25.

At the April 24–25 deposition, Countouris again refused to say who told him about the May 1983 committee report. He did answer that he had discussed the report with General Marinakis. He also stated that he had information from "various members of the Committee," but he refused to identify the others "because first of all I'm a retired officer of the Air Force. I know what's going on and how I have to protect the various people, you know, there. So, I can't do any harm, you know, to those people." Counsel for General Dynamics reminded Countouris:

"Q: Last week in Court your counsel said that you would disclose those names to me?

A: Yes."

Countouris mentioned names of people on the committee, but as to what any individual told him Countouris said: "First of all, I can't recall. Second, if I remember, I can't tell you." After a conference with his attorney, he testified that he could not recall any particular discussion with any of the specific individuals on the committee about the May report.

General Dynamics moved for sanctions. The magistrate judge found that, "[b]ased on a thorough review of the transcript excerpts submitted by the parties, it is ... evident that Countouris willfully refused to answer questions about his sources despite being ordered by the Court to do so." *Avionic Co.*, slip op. at 4 (June 5, 1990). The magistrate judge found that in light of Countouris' repeated refusals to reveal the identities of his informants, his "subsequent lapse of memory" was not credible. *Id.* Based on what she found to be a willful refusal to obey a court order, the magistrate judge recommended that Count I of Avionic's complaint be dismissed and that Avionic be prohibited from introducing evidence concerning "the May 1983 selection of the F–16 aircraft by the government of Greece," slip op. at 5–6, at the trial of its remaining claim, for quasi-contract damages.

The district court adopted the magistrate's report and recommendation, holding that the recommended sanctions were not unduly severe: "Avionic cannot bring this action and then refuse to supply defendant with information known only to plaintiff's witness which impacts crucially upon plaintiff's ability to prove its case." *Avionic Co. v. General Dynamic Corp.*, No. 88–2030C(6), slip op. at 5 (E.D.Mo. June 14, 1990). Accordingly, the court entered its order dismissing Count I and prohibiting Avionic from introducing at trial any evidence regarding the Greek government's alleged May 1983 selection of the F–16. Slip op. at 5.

■■■■ Avionic first argues that the district court was not authorized under Fed. R.Civ.P. 37(b)(2)[3] to dismiss its claim be-

---

**3.** Rule 37(b)(2) provides in relevant part:

(2) **Sanctions by Court in Which Action is Pending.** If a party or an officer, director, or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails to obey an order to provide or permit discovery, including an or-der made under subdivision (a) of this rule or Rule 35, or if a party fails to obey an order entered under Rule 26(f), the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

. . . .

cause Avionic had no notice of the order compelling Countouris to answer the question until after Countouris' deposition had ended on April 25. We need not decide whether the written order formed a proper basis for Rule 37(b)(2) sanctions, for Avionic does not dispute the magistrate judge's assertion that she indicated orally at the discovery conference that she would grant the motion to compel and that Avionic's counsel said Countouris would answer the question. Oral proceedings compelling discovery that "unequivocally give a litigant notice" of the discovery required are a sufficient basis for Rule 37(b)(2) sanctions. *Henry v. Sneiders,* 490 F.2d 315, 318 (9th Cir.), *cert. denied,* 419 U.S. 832, 95 S.Ct. 55, 42 L.Ed.2d 57 (1974); *Bhan v. NME Hospitals, Inc.,* 929 F.2d 1404, 1415 (9th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 617, 116 L.Ed.2d 639 (1991). *See generally Tamari v. Bache & Co. (Lebanon) S.A.L.,* 729 F.2d 469, 472 (7th Cir.1984) (collecting cases). The oral order in this case satisfied the purpose of the prior order requirement, which is to give the party failing to comply with discovery adequate notice of what is required and "an opportunity to contest the discovery sought prior to the imposition of sanctions." *Dependahl v. Falstaff Brewing Corp.,* 653 F.2d 1208, 1213 (8th Cir.), *cert. denied,* 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981).

Our conclusion that the oral order was sufficient also answers Avionic's argument that Countouris' refusal to answer could not be a "willful" refusal to obey the court because he had not been ordered to answer.

■ Avionic next argues that we must reverse the district court's order because the court failed to make findings regarding whether lesser sanctions would be effective and whether dismissal was appropriate in light of previous orders in this case. In this circuit, before dismissing a case under Rule 37(b)(2) the court must investigate whether a sanction less extreme than dis-

missal would suffice, *unless* the party's failure was deliberate or in bad faith. *Denton v. Mr. Swiss of Missouri, Inc.,* 564 F.2d 236, 240–41 (8th Cir.1977). *See generally Shelton v. American Motors Corp.,* 805 F.2d 1323, 1329–30 (8th Cir.1986) (willfulness *and* bad faith required).

■ When the facts show willfulness and bad faith, the selection of a proper sanction, including dismissal, is entrusted to the sound discretion of the district court. *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976) (per curiam). The record abundantly supports the district court's explicit finding of willful disobedience as well as the implicit finding of bad faith inherent in the magistrate's conclusion that Countouris falsely said he did not remember certain facts because he did not want to answer the questions. *See* slip op. at 4 (June 5, 1990). Since the district court's findings of fact are not clearly erroneous, we will not reverse its selection of a sanction unless the court abused its discretion.

Of course, that discretion is bounded by the requirement of Rule 37(b)(2) that the sanction be "just," and relate to the claim at issue in the order to provide discovery. *Shelton,* 805 F.2d at 1329. *See generally Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 707, 102 S.Ct. 2099, 2106, 72 L.Ed.2d 492 (1982).

■ Avionic argues that Countouris' refusal to answer questions about the May 1983 committee report did not harm General Dynamics, because Avionic would not have relied on the May 1983 report to prove its claim. The materiality of the issue on which discovery is withheld and the difficulty posed to the opponent by the withholding are certainly relevant factors in assessing the "justice" of a sanctions order. *See, e.g., Insurance Corp. of Ireland,* 456 U.S. at 708, 102 S.Ct. at 2107. *See*

(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence;

(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party.

*generally Shelton*, 805 F.2d at 1330 (record must show opponent has been prejudiced by failure to make discovery). However, the record in this case shows that the discovery was quite material and Avionic's failure to provide it did prejudice General Dynamics. The deliberations of the New Fighter Aircraft Committee in May 1983 and the alleged decision in October 1983 by the Greek government to buy the F-16 were part of the same process, and cannot be separated into discrete units for purposes of discovery. General Dynamics is entitled to explore Avionic's version of the events culminating in the "selection" of the F-16. In interrogatory answers filed in May 1990, after Countouris' deposition was over, Avionic still answered that it based its claim of "selection" in part on the action of the "Hellenic Air Force NFA evaluation committee" in May 1983. In the context of Rule 37(b)(2) motions "prejudice" exists if the failure to make discovery impairs the opponent's ability to determine the factual merits of the party's claim. *See Denton*, 564 F.2d at 240. In this case, Avionic's failure to make discovery is now unalterable, since General Countouris has died. *See Fletcher v. Southern Farm Bureau Life Ins. Co.*, 757 F.2d 953, 956–57 (8th Cir.1985) (upholding dismissal where plaintiff refused to submit to physical examination until the only suitable clinic for the examination had closed). Given the close relationship between the facts Avionic has sealed off from discovery and Avionic's theory of the case, we cannot say that the district court abused its discretion in deciding General Dynamics was prejudiced by Avionic's failure or in dismissing Avionic's claim.

We affirm the judgment of the district court.