**Gayle White MALAUTEA, as guardian of Fati F. Malautea and Gayle White Malautea, individually and as class representative, Thomas Nash, co-guardian of Fati F. Malautea, Plaintiffs–Appellees,**

v.

**SUZUKI MOTOR COMPANY, LTD., a Japanese Corporation, American Suzuki Motor Corporation, a California Corporation, Defendants–Appellants,**

**Joe C. Freeman, Jr., Michael J. Goldman, Philip Siracuse, Patrick J. Becherer, James Deroche, Appellants.**

Nos. 92–8029, 92–8175.

United States Court of Appeals, Eleventh Circuit.

April 9, 1993.

---

Joe C. Freeman, Jr., Michael J. Goldman, Freeman & Hawkins, Atlanta, GA, Philip L. Siracuse, James D. DeRoche, Crosby, Heafy, Roach & May, Los Angeles, CA, Patrick J. Becherer, Crosby, Heafy, Roach & May, Oakland, CA, C.B. Rogers, James W. Beverage, Richard H. Sinkfield, Rogers & Hardin, Atlanta, GA, for defendants-appellants.

Kenneth L. Royal, Savannah, GA, Patrick A. Dawson, James E. Butler, Jr., Robert D. Cheeley, Butler, Wooten, Overby & Cheeley, Atlanta, GA, for plaintiffs-appellees.

Francis H. Hare, Jr., Legal Counsel, The Attys. Information Exchange Group, Inc., Birmingham, AL, for amicus—The Attys. Information Exchange Group, Inc.

Before FAY and ANDERSON, Circuit Judges, and RONEY, Senior Circuit Judge.

FAY, Circuit Judge:

The defendants and their attorneys appeal sanctions imposed on them for grave and repeated abuses of the discovery process. In the district court, the defendants continually and willfully resisted discovery, even deliberately withholding discoverable information that the judge had ordered them to produce. As a result, the district judge, pursuant to FED.R.CIV.P. 37(b)(2)(C), struck their answers and entered a default judgment against them on the issue of liability. Pursuant to 28 U.S.C. § 1927 and FED.R.CIV.P. 26(g), he ordered the defendants and their attorneys held jointly and severally responsible for the plaintiff's costs and attorneys' fees. Finally, pursuant to the court's inherent powers, the district judge fined each defendant $5,000 and each defense attorney of record $500. The district judge's factual findings in support of these sanctions are not clearly erroneous. Moreover, we find no abuse of discretion in the sanctions chosen or the process accorded the appellants before sanctions were imposed. We affirm the district judge's order imposing sanctions on the defendants and their attorneys.

## FACTS AND PROCEDURAL HISTORY

This case arose out of a traffic accident in which the plaintiff's husband,[1] Fati F.

---

1. The plaintiff's husband was so incapacitated by his injuries that the plaintiff, Gayle White

Malautea, was severely injured. After colliding with another car, Mr. Malautea's 1988½ Suzuki Samurai rolled over, and Mr. Malautea sustained serious head and spinal cord injuries. The plaintiff sued defendants Suzuki Motor Corporation and American Suzuki Motor Corporation, alleging that defects in Mr. Malautea's Suzuki Samurai caused or aggravated his injuries. From the beginning of the discovery process, the defendants stubbornly withheld discoverable information by improperly objecting to interrogatories and by providing only partial responses to the interrogatories they answered. Because the parties were unable to resolve their discovery disputes, the plaintiff indicated in a joint status report filed July 2, 1991 that she would move the court to compel the defendants to provide the discovery she requested.

The plaintiff filed a motion to compel on July 23, and United States District Judge Avant Edenfield considered the motion during a routine status conference on July 24. Judge Edenfield orally ordered the defendants to produce most of the information the plaintiff sought, including "testing from Suzuki ... before the vehicle was released [and] documents dealing with certain design issues involved in the case such as body structure." R–15–250–3. The judge sternly warned the defendants, "I am going to start striking answers unless [the information requested] comes forward.... [Defense counsel] are trying to withhold information. I am not going to take it.... You produce it." *Id.* Throughout the status conference, Judge Edenfield made absolutely clear his order that the defendants produce the information that the plaintiff requested, even if they thought the plaintiff's requests were overly broad. Two days after the status conference, Judge Edenfield confirmed his oral order with a written "Minute Order," compelling the production of "all discovery

pertaining to 'rollover' accidents, seat-belt failures, design and testing materials on all Suzuki Samurais manufactured since 1984, and materials relating to marketing and public relations, within fifteen (15) days." R–3–38.

Even after Judge Edenfield extended the time allowed for the defendants to comply with this discovery order, the discovery abuses continued. In spite of two orders from the Magistrate Judge to produce deposition transcripts requested by the plaintiff, the defendants delayed until the day the plaintiff filed a motion for sanctions. Attempting to resolve the remaining discovery disputes, on August 30 Judge Edenfield entered a ten page order again requiring the production of "any material subject to a previous order...." R–5–38–10. Judge Edenfield warned that "the Court is outraged by the dilatory tactics of the parties in this case." R–5–38–1. For the second time, he warned the defendants that "[f]ailure to [produce the requested material] will result in the Court's striking of all defensive pleadings." R–5–38–9. Finally, Judge Edenfield advised the parties that he would "hold a hearing to determine whether the Defendants and/or the Plaintiffs should be sanctioned for their dilatory discovery tactics." R–5–38–10. Still, in spite of repeated warnings and the prospect of a sanctions hearing, the defendants failed to produce much of the information they twice had been ordered to produce.

As promised, Judge Edenfield held a sanctions hearing on December 13, 1991 and allowed each side one hour to present arguments and evidence. The defendants, however, presented no evidence showing that their failure to comply with the discovery orders was due to misunderstanding or inability to comply. On December 30, the judge entered an order imposing sanctions on the defendants, the defendants' attorneys, and the plaintiff's attorneys.[2] In this

---

Malautea, was appointed his legal guardian and instituted this suit on his behalf. Mrs. Malautea also sued on her own behalf for loss of consortium, and Mr. Malautea's co-guardian, Thomas Nash, was later added as a co-plaintiff. We will refer to these parties collectively as "the plaintiff."

2. Judge Edenfield fined the plaintiff's attorneys $100 for attempting to compel a non-party law firm to produce documents which they knew had been sealed by court order. In addition, he ordered the plaintiff's attorneys to reimburse the non-party law firm its costs associated with obtaining a protective order covering the sealed

order, Judge Edenfield detailed the discovery abuses in this case, his factual findings, and his reasons for sanctioning the litigants and counsel as he did. The judge found that the defendants had delayed producing documents and had given misleading answers to interrogatories and requests to produce, "using a number of techniques to obfuscate the truth." R–15–250–8.

Judge Edenfield specifically discussed four methods that the defendants and their attorneys used to resist discovery. First, he found that the defendants improperly refused to answer interrogatories on the ground that certain words and phrases were not defined. For example, the defendants balked at phrases such as "tests, research or other investigation," "risk of rollover," "risk of personal injury," "substantially similar," "change, alteration or modification," and "engineer." Judge Edenfield found that these words and phrases were not ambiguous in the context of the plaintiff's questions. He concluded that the defendants' objections were "part of their overall plan to obstruct the Plaintiff's discovery attempts" and that "no sanction … will change this aspect of the Defendants' conduct." R–15–250–9, 10.

Second, Judge Edenfield found that the defendants and their counsel resisted discovery orders by improperly "refus[ing] to answer general questions, choosing instead to limit the question to a narrower field." R–15–250–10. For example, when the plaintiff requested information regarding several model years, the defendants limited their responses only to the 1988½ model year. When the plaintiff asked about several vehicles similar to the Samurai, the defendants limited their answers to the Samurai itself. In this way, the defendants avoided revealing a great deal of discoverable information regarding testing and changes in the design of the Samurai.

Third, Judge Edenfield found that the defendants' delay in producing deposition transcripts, after the Magistrate Judge twice ordered their production, hampered the plaintiff's attorneys' efforts to prepare their case. The delay "denied the Plaintiff's counsel time for a meaningful review of the earlier depositions before conducting their own depositions." R–15–250–18. Ultimately, the plaintiff had to file a motion for sanctions to force the defendants to comply with the court's orders. At the sanctions hearing, defense counsel illustrated the defendants' cavalier attitude toward the court's discovery orders by claiming to have forgotten to comply with the two orders to produce the transcripts. No matter whether the defendants "forgot" to comply with two court orders or deliberately delayed production to sabotage the plaintiff's depositions, Judge Edenfield found that the defendants' intransigence hampered the discovery process and showed disdain for the court's orders.

Finally, Judge Edenfield found that the prime example of the defendants' resistance to discovery was their deliberate cover up of damaging evidence regarding General Motors' refusal to market the Samurai in the United States. The plaintiff specifically requested this information through interrogatories.[3] R–15–250–12–13. After objecting to the question as vague and overly broad and burdensome, the defendants answered that they were "unaware of any decision by General Motors not to market the Samurai" and "there was no decision not to market a vehicle of the same design as the Samurai." R–15–250–13, 14. In spite of the July 24, July 26, and August 30 court orders compelling responses to the plaintiff's interrogatories, "[n]either defendant ever provided any informa-

documents. Because the plaintiff's attorneys have not appealed these sanctions, we do not address them here.

**3.** Plaintiff's Interrogatory No. 18 asked in relevant part:
 Describe in detail all discussions or communications between the defendants and GMC concerning the design or marketing in the United States of either a vehicle which is identical to or substantially similar to a Suzuki Samurai, or any other sport utility vehicle, noting in particular:
 (a) How and why it was decided not to market a vehicle of the same design as the Samurai….

tion concerning Suzuki's correspondence with GM about the Samurai." R–15–250–14.

Ultimately, the plaintiff had to obtain this information from General Motors. Under court order, General Motors gave the plaintiff documents and correspondence showing that in 1982 Suzuki suggested that General Motors market Suzuki's sport utility vehicle in the United States. Considering the offer, General Motors performed tests on the Suzuki SJ410, which Judge Edenfield found to be the same vehicle as the Samurai.[4] One of these tests consisted of locating the vehicle's center of gravity and calculating how that location would affect the vehicle's tendency to roll over. As a General Motors engineer wrote to Suzuki executives on April 9, 1984, this and similar tests led General Motors to decline to market Suzuki's sport utility vehicle in the United States because of "perceived rollover tendencies." In spite of the defendants' interrogatory responses, the head of Suzuki's legal department in Japan admitted at the sanctions hearing that Suzuki executives must have known of this correspondence between Suzuki and General Motors. Suzuki's national counsel admitted knowing of the same communications at least as early as 1989.

Thus, Judge Edenfield correctly found that Suzuki's responses which disclaimed knowledge of, and even the existence of, General Motors' decision not to market the Samurai were, "if not completely false, at least misleading." The judge concluded that Suzuki deliberately withheld this information from the plaintiff and that Suzuki counsel participated in the cover up. He also concluded that both the defendants and their attorneys committed all of the above-detailed discovery abuses willfully, in bad faith. Finally, Judge Edenfield determined that this bad faith and intransigence could not be cured by sanctions less severe than a default judgment against both Suzuki and American Suzuki.

> The Court has decided to impose severe sanctions on the Defendants because their actions, as a whole, reveal a bad faith decision to avoid revealing the truth at all costs. The Court has chosen the most severe sanction because no other sanction will deter the Defendants, and similarly situated parties, from repeating this egregious conduct.

R–15–250–26.

Because the defendants willfully violated the district court's discovery orders of July 24, July 26, and August 30, Judge Edenfield imposed the FED.R.CIV.P. 37(b)(2)(C) sanction of striking the defendants' answers and entering a default judgment against them on the issue of liability. Pursuant to 28 U.S.C. § 1927, Judge Edenfield ordered defense attorneys Freeman, Goldman, Becherer, and Siracuse to "satisfy personally the Plaintiff's reasonable costs and attorney's fees" because "their participation in the Defendants' cover up of discoverable material multiplied 'the proceedings unreasonably and vexatiously.' " R–15–250–29 (citation omitted). In addition, pursuant to FED.R.CIV.P. 26(g), the judge held the defendants and their counsel jointly and severally responsible for "the Plaintiff's attorney's fees and costs associated with this protracted and costly discovery period."[5] R–15–250–31. He imposed this sanction because he found that the defendants answered and objected to interrogatories with the improper purpose of "caus[ing] unnecessary delay, increas[ing] the cost of litigation for the Plaintiff, and caus[ing] the time for discovery to end before the Plaintiff had obtained the discovery materials she needed to litigate this case." R–15–250–30. Finally, pursuant to the court's inherent powers, Judge Edenfield fined each defendant $5,000 and each

---

4. The main difference between the Suzuki SJ410 and the Samurai (also called the SJ413) is that the SJ410 has a 1.0 liter engine, while the Samurai has a 1.3 liter engine. Although General Motors performed its tests on the SJ410, both Suzuki and General Motors contemplated that General Motors would market the SJ413, or Samurai.

5. Because Judge Edenfield has not yet determined the amount of costs and fees to be assessed under 28 U.S.C. § 1927 and FED.R.CIV.P. 26(g), we express no opinion regarding an appropriate amount of sanction.

defense attorney of record $500. The judge imposed these fines because he found that the "Defendants' actions have caused not only unnecessary delay and increased cost of ... litigation for the parties, but also an increased burden on the Court."[6] R–15–250–34–35.

## DISCUSSION

The defendants and their attorneys appeal these sanctions on a number of grounds. They argue that the sanction of a default judgment was inappropriate because: (1) the discovery orders did not encompass the General Motors information and, therefore, were not violated; (2) even if the orders did encompass that information, they were too vague to support Rule 37 sanctions; (3) any failure to comply was due to the defendants' misunderstanding of the court's vague orders; and (4) the default judgment sanction was too harsh because there was no pattern of abuse, the district court never imposed lesser sanctions, and the defendants had a meritorious defense. In addition, the appellants argue that the monetary sanctions were inappropriate because they merely tried, in good faith, to comply with the court's orders while vigorously defending the suit against them. However, in spite of the appellants' protestations of innocence, we find that Judge Edenfield committed no clear error when he found that the appellants willfully violated court orders and abused the discovery process. The sanctions imposed for this egregious conduct were well within the judge's discretion. We affirm.

### Rule 37(b)(2)(C) Default Judgment

■ The sanction of striking the defendants' answers and entering a default judgment against them was authorized by Rule 37(b)(2)(C). This rule provides in relevant part:

> If a party ... fails to obey an order to provide or permit discovery ... the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
> ....
> (C) An order striking out pleadings ... or rendering a judgment by default against the disobedient party....

FED.R.CIV.P. 37(b)(2)(C). This rule gives district judges broad discretion to fashion appropriate sanctions for violation of discovery orders; however, this discretion is guided by judicial interpretation of the rule. For example, a default judgment sanction requires a willful or bad faith failure to obey a discovery order. *Societe Internationale pour Participations Industrielles et Commerciales v. Rogers*, 357 U.S. 197, 212, 78 S.Ct. 1087, 1096, 2 L.Ed.2d 1255 (1958). Violation of a discovery order caused by simple negligence, misunderstanding, or inability to comply will not justify a Rule 37 default judgment or dismissal. *In re Chase and Sanborn Corp.*, 872 F.2d 397, 400 (11th Cir.1989) (inability to comply); *Equal Employment Opportunity Comm'n v. Troy State Univ.*, 693 F.2d 1353, 1357 (11th Cir.1982) (simple negligence or misunderstanding). In addition, the Supreme Court has interpreted the Rule 37 requirement of a "just" sanction to represent "general due process restrictions on the court's discretion." *Insurance Corp. of Ireland, Ltd., v. Campagnie des Bauxites de Guinee*, 456 U.S. 694, 707, 102 S.Ct. 2099, 2106, 72 L.Ed.2d 492 (1982). Finally, the severe sanction of a dismissal or default judgment is appropriate only as a last resort, when less drastic sanctions would not ensure compliance with the court's orders. *See Navarro v. Cohan*, 856 F.2d 141, 142 (11th Cir.1988).

■ In this case, the defendants richly deserved the sanction of a default judgment. The discovery orders of July 24,[7]

---

**6.** The judge also fined the plaintiff's attorneys $100 for discovery abuses. See *supra*, note 2.

**7.** Judge Edenfield gave the July 24 discovery order orally at the status conference. Contrary to the defendants' arguments, this oral discovery order is a valid basis for Rule 37 sanctions. Oral orders are just as binding on litigants as written orders; the consequences for violating an oral order are the same as those for violating a written order. Therefore, in determining the propriety of the Rule 37 sanction, we consider both the judge's written and oral discovery orders. *Avionic Co. v. General Dynamics Corp.*, 957 F.2d 555, 558 (8th Cir.1992).

July 26, and August 30 clearly encompassed the General Motors information and were definite enough to support Rule 37 sanctions. The plaintiff specifically requested the General Motors information pertaining to testing, design, and marketing of the Samurai and similar vehicles. In Judge Edenfield's orders, he expressly referred to these materials. Therefore, the judge's orders undoubtedly compelled the defendants to provide the General Motors information.

Nevertheless, both defendants refused to reveal this discoverable information, willfully violating the court's three clear orders. Although the defendants now claim simply to have misunderstood the scope of the discovery orders, misunderstanding was not the cause of their failure to comply. Neither defendant has provided a credible explanation of how it interpreted the discovery orders not to encompass the General Motors information. Neither defendant asked Judge Edenfield to clarify the orders, as a genuinely confused litigant, twice-threatened with the sanction of a default judgment, would have done. In particular, the defendants never asked Judge Edenfield to explain whether the orders covered the plaintiff's interrogatory that requested the General Motors information. As a result, Judge Edenfield's factual finding that the defendants violated the discovery orders willfully and in bad faith is not clearly erroneous. This finding of willfulness is not called into question by the defendants' naked assertion that they were unable to produce the information in the time allowed. The defendants have shown no evidence of inability to comply, and we will not reject Judge Edenfield's finding of willfulness solely because the defendants now purport to have been unable to comply.[8] *See Chase and Sanborn,* 872 F.2d at 400 (To succeed on a defense of inability to comply, the sanctioned party "must go beyond a mere assertion of inability and ... introduc[e] evidence in support of his claim.").

■ Having determined that the defendants willfully violated clear discovery orders, we now turn to the question of whether the sanction imposed for this willful violation was "just." We find that it was. The defendants received ample notice of the possibility of a default judgment sanction and liberal opportunity to show why the sanction was not deserved. First, at the July 24 status conference, the judge said "I am going to start striking answers unless [the information requested] comes forward." Then, in his August 30 order compelling production, the judge warned, "[f]ailure to [produce the requested material] will result in the Court's striking of all defensive pleadings." Still, after three orders, an extension of time allowed for discovery, and two explicit warnings of a default judgment sanction, the defendants did not comply with the court's orders or show an acceptable excuse for their failure to comply. At the December 13 sanctions hearing, Judge Edenfield allowed each side one hour to present argument, live testimony, and documentary evidence relevant to

8. At oral argument, the appellants' counsel argued that the default judgment sanction was unfair because the production of documents and information is a laborious process for foreign corporations, like Suzuki. Counsel claimed that Suzuki was unable to meet the district court's discovery deadline because it had to find the requested documents in Japan, translate them into English, and then ship them to the United States. However, this explanation is belied by the fact that Suzuki *never* produced the requested General Motors information, even though it was first ordered to do so on July 24, 1991 and sanctions were not imposed until December 30, 1991.

More importantly, we seriously doubt that the laborious process which counsel described at oral argument would have been necessary in this case. There has been so much litigation in the United States surrounding the Samurai that it is difficult to believe that this highly relevant information has not already been translated and provided to Suzuki's defense counsel in the United States. It would be extremely difficult to defend all of the suits generated by the Samurai without access to this kind of testing, design, and marketing information, unless one is making a deliberate effort to hide such damaging evidence. If our suspicions regarding the General Motors information are true, then counsel's oral argument statement regarding Suzuki's inability to comply was a bold falsity. Of course, the defendants' appellate counsel may have fully believed his representation to this court; he may just have been the innocent lamb which the defendants led to slaughter.

the imposition of sanctions. He also allowed the parties to submit additional evidence for days after the hearing. In sum, the defendants have failed to demonstrate any injustice in the default judgment sanction due to lack of adequate notice or opportunity to show a legitimate excuse for failing to comply with the court's orders.

Similarly, the defendants have failed to show that the harshness of the sanction rendered it unjust. As Judge Edenfield found, the defendants and their attorneys engaged in an unrelenting campaign to obfuscate the truth. They improperly objected to interrogatories in order to avoid revealing information; the answers they did give were incomplete and unreasonably narrow; they delayed (either deliberately or carelessly) complying with the Magistrate Judge's orders to produce deposition transcripts; and they never produced the General Motors information as ordered. As the judge concluded, sanctions less harsh than a default judgment would not have changed the defendants' behavior. Therefore, we find that Judge Edenfield did not abuse his discretion by resorting to the sanction of a default judgment.

■ Moreover, the defendants' remaining objections regarding the harshness of the default sanction are without merit. Contrary to the defendants' arguments, a default sanction may be proper even when not preceded by the imposition of lesser sanctions. When lesser sanctions would be ineffective, Rule 37 does not require the vain gesture of first imposing those ineffective lesser sanctions. Finally, the probable merit of a litigant's case does not preclude the imposition of a default judgment sanction against that litigant. "Discovery orders must be obeyed even by those foreseeing ultimate success in the district court." *United States v. $239,500 in U.S. Currency*, 764 F.2d 771, 773 (11th Cir.1985).

In sum, we affirm the Rule 37(b)(2)(C) sanction of a default judgment against the defendants on the issue of liability. Judge Edenfield's factual findings supporting the sanction are not clearly erroneous. Nor was the selection of the default judgment

sanction an abuse of discretion, in light of these facts.

*28 U.S.C. § 1927 Sanction of Costs and Attorney's Fees*

■ In addition to the default judgment sanction, Judge Edenfield properly sanctioned defense attorneys Freeman, Goldman, Becherer, and Siracuse pursuant to 28 U.S.C. § 1927. He ordered these attorneys to "satisfy personally the Plaintiff's reasonable costs and attorney's fees" because their "participation in the Defendants' cover up of discoverable material multiplied 'the proceedings unreasonably and vexatiously.'" R–15–250–29. This sanction was entirely appropriate. Section 1927 provides: "Any attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927 (1988). This statute was designed to curb exactly the kinds of abuses that defense counsel committed in this case. It allows district courts to "assess attorney's fees against litigants, counsel, and law firms who willfully abuse the judicial process by conduct tantamount to bad faith." *Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir.1991).

As outlined above, examples of defense counsel's bad faith and willful abuse of the judicial process abound. Attorney Siracuse admitted at the sanctions hearing that he knew of General Motors' decision not to market Suzuki's sport utility vehicle; Judge Edenfield found that Siracuse participated in the cover up of this damaging evidence. Defense counsel either carelessly or deliberately failed to comply with two orders to produce deposition transcripts until the plaintiff moved for sanctions. Throughout discovery, the defendants, through their counsel, unreasonably objected to the plaintiff's requests for information and provided incomplete answers as part of their campaign to obfuscate the truth. In light of this egregious conduct, we conclude that Judge Edenfield did not clearly err in finding that these defense attorneys acted in bad faith.

In addition, there is no clear error in Judge Edenfield's determination that this bad faith conduct multiplied the proceedings unreasonably and vexatiously. Defense resistance to discovery required Judge Edenfield to issue three orders compelling the production of information that should have been produced without any judicial prompting. The defendants' delay in producing deposition transcripts required the Magistrate Judge to issue a second order compelling production of the transcripts. Countless motions, responses, briefs in support and opposition, and letters to the district court occupied far more of the court's time than the case itself required. Moreover, defense intransigence necessitated an evidentiary hearing regarding sanctions, a thirty-eight page order imposing sanctions, and this appeal. Therefore, we conclude that Judge Edenfield did not clearly err in finding that defense counsel's bad faith conduct multiplied the proceedings unreasonably and vexatiously. The judge was well within his discretion to sanction defense attorneys Freeman, Goldman, Becherer, and Siracuse pursuant to § 1927.

### Rule 26(g) Sanction of Costs and Attorneys' Fees

 Judge Edenfield also properly ordered the defendants and their attorneys held jointly and severally responsible for the plaintiff's costs and attorneys' fees pursuant to FED.R.CIV.P. 26(g). Rule 26(g) was "designed to curb discovery abuse by explicitly encouraging the imposition of sanctions." FED.R.CIV.P. 26(g) advisory committee's note (1983 Amendment). It requires an attorney or pro se litigant to sign "every request for discovery or response or objection thereto." FED.R.CIV.P. 26(g). The signature certifies, in relevant part, "that the signer has read the request, response, or objection, and that to the best of the signer's ... belief formed after a reasonable inquiry it is ... not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation...." *Id.* If a certification is made in violation of Rule 26(g),

the court ... *shall* impose upon the person who made the certification, the party on whose behalf the request, response, or objection is made, or both, an appropriate sanction, which *may* include an order to pay the reasonable expenses incurred because of the violation, including a reasonable attorney's fee.

*Id.* (emphasis added).

Rule 26(g) makes the imposition of "an appropriate sanction" mandatory if a discovery request, response, or objection is interposed for an improper purpose. In this case, Judge Edenfield found that the defendants' discovery responses and objections were interposed for the improper purposes of "caus[ing] unnecessary delay, [increasing] the cost of litigation for the Plaintiff, and [causing] the time for discovery to end before the Plaintiff had obtained the discovery material that she needed to litigate this case." R–15–250–30. To say the least, this finding is not clearly erroneous. Therefore, Rule 26(g) required the judge to sanction the defendants, the attorneys who signed their discovery responses and objections, or both. Imposing costs and attorneys' fees against both the defendants and their attorneys was not an abuse of discretion; indeed, that sanction is suggested in the text of the rule. We affirm.

### Fines Imposed under the Court's Inherent Powers

 We also affirm the fines imposed on the defendants and the defense attorneys of record pursuant to the district court's inherent power to control the proceedings before it. "[D]eeply rooted in the common law tradition is the power of any court to 'manage its affairs [which] necessarily includes the authority to impose reasonable and appropriate sanctions upon errant lawyers practicing before it.'" *Carlucci v. Piper Aircraft Corp.,* 775 F.2d 1440, 1447 (11th Cir.1985) (citation omitted). Courts' inherent power also extends to parties to litigation. *Chambers v. NASCO, Inc.,* —— U.S. ——, ——, 111 S.Ct. 2123, 2133, 115 L.Ed.2d 27 (1991). A court may appropriately sanction a party or attorney who "shows bad faith by delaying or disrupting the litigation or by hampering en-

forcement of a court order." *Hutto v. Finney,* 437 U.S. 678, 689 n. 14, 98 S.Ct. 2565, 2573 n. 14, 57 L.Ed.2d 522 (1978). However, because a court's inherent powers are so potent, they must be exercised with restraint and discretion. *Chambers,* — U.S. at —, 111 S.Ct. at 2132. In light of the willful misconduct in this case, we conclude that Judge Edenfield did not abuse this discretion by fining each defendant $5,000 and each defense attorney of record $500. These fines justly punished the defendants and their attorneys and, hopefully, will deter other litigants from engaging in similar activity.

In sum, we affirm all of the sanctions imposed on the defendants and their attorneys. The factual findings supporting the sanctions are not clearly erroneous. Judge Edenfield did not abuse his discretion by sanctioning the defendants and their attorneys as he did, commensurate with the recalcitrance and bad faith displayed in this case.

Having examined the misconduct in this case and affirmed the sanctions imposed, we feel compelled to remark on the disturbing regularity with which discovery abuses occur in our courts today. The Federal Rules of Civil Procedure were adopted in 1937 in the hope of securing "the just, speedy, and inexpensive determination of every action." FED.R.CIV.P. 1. Today, fifty-six years later, the drafters of these rules certainly would be disappointed to see how far from that ideal we remain. The discovery rules in particular were intended to promote the search for truth that is the heart of our judicial system. However, the success with which the rules are applied toward this search for truth greatly depends on the professionalism and integrity of the attorneys involved. Therefore, it is appalling that attorneys, like defense counsel in this case, routinely twist the discovery rules into some of "the most powerful weapons in the arsenal of those who abuse the adversary system for the sole benefit of their clients." [9]

■ All attorneys, as "officers of the court," owe duties of complete candor and primary loyalty to the court before which they practice. An attorney's duty to a client can never outweigh his or her responsibility to see that our system of justice functions smoothly. This concept is as old as common law jurisprudence itself. In England, the first licensed practitioners were called "Servants at law of our lord, the King" [10] and were absolutely forbidden to "decei[ve] or beguile the Court." [11] In the United States, the first Code of Ethics, in 1887, included one canon providing that "the attorney's office does not destroy ... accountability to the Creator," and another entitled "Client is not the Keeper of the Attorney's Conscience."

Unfortunately, the American Bar Association's current Model Rules of Professional Conduct underscore the duty to advocate zealously while neglecting the correspond-

---

**9.** Tommy Prud'homme, *The Need for Responsibility Within the Adversary System,* 26 GONZ. L.REV. 443, 460 (1990/1991). Many commentators have decried the pervasiveness of discovery abuses by attorneys who compromise their professionalism to indulge their clients' wishes, no matter how objectionable those wishes are. *See, e.g.,* Wayne D. Brazil, *The Adversary Character of Civil Discovery: A Critique and Proposals for Change,* 31 VAND.L.REV. 1295 (1978); Marvin Frankel, *The Search for Truth: An Umpireal View,* 123 U.PA.L.REV. 1031 (1975); Eugene R. Gaetke, *Lawyers as Officers of the Court,* 42 VAND.L.REV. 39 (1989); Charles B. Renfrew, *Discovery Sanctions: A Judicial Perspective,* 67 CAL. L.REV. 264 (1979).

For examples of some attorneys' attitudes toward the discovery process and their role in the judicial system, see Wayne D. Brazil, *Views From the Front Lines,* 1980 AM.B.FOUND.RES.J. 217

(1980). In this article, Prof. Brazil reported the results of an A.B.A. study of the discovery process, including interviews of 180 Chicago-area attorneys. Some of the views expressed by attorneys included:

"Our job is to win for our side. We aren't out to do justice; that's the judge's job." *Id.* at 250 n. 53.

"Discovery is a business. How long can I pay these attorneys to avoid the outcome of the case becomes the businessman's question today." *Id.* at 232.

Regarding discovery, "[n]ever be candid and never helpful and make [your] opponent fight for everything." *Id.* at 250 n. 54.

**10.** G. WARVELLE, ESSAYS IN LEGAL ETHICS 30 (1902).

**11.** First of Westminster, ch. 29, reprinted in H. DRINKER, LEGAL ETHICS 14–15 (1953).

ing duty to advocate within the bounds of the law. As a result, too many attorneys have forgotten the exhortations of these century-old canons. Too many attorneys, like defense counsel in this case, have allowed the objectives of the client to override their ancient duties as officers of the court. In short, they have sold out to the client.

We must return to the original principle that, as officers of the court, attorneys are servants of the law rather than servants of the highest bidder. We must rediscover the old values of our profession. The integrity of our justice system depends on it.

The district judge's order imposing sanctions is, in all respects, AFFIRMED.[12]

RONEY, Senior Circuit Judge, concurring.

I concur in the decision of the court and the analysis of the issue presented. As to the comments in the opinion about the failure of defense counsel generally to respond properly to discovery requests, I would suggest that it is difficult for an appellate court acting in its review function to obtain empirical evidence concerning the causes of the problems that are present in the current discovery process. It is my impression, however, that the improper discovery activity which unnecessarily prolongs and raises the cost of litigation is the result of abuses by both plaintiffs and defendants and their lawyers, and is partly caused by the failure of busy courts to properly monitor the use of discovery procedures. I would hold all parties and lawyers to a higher standard of good faith in the discovery process, and through rules changes and judicial decision do something about the inordinate time and expense of litigation caused by unnecessary and burdensome discovery activity.

---

**12.** Judges Fay and Anderson join in Judge Roney's separate comments.