# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 02-3716EM, 02-3717EM, 02-3799EM, 02-3802EM

_____

_____    *
                                    *
No. 02-3716EM, 02-3717EM            *
_____    *
                                    *
In re Denis J. O'Brien,             *
                                    *
          Debtor.                   *
                                    *
-----------------------------------    *
                                    *
Nicholas Valner and Kenneth Sidney    *
Roberts, as Executors of the Will of    *
George Harrison,                    *
                                    *
          Appellees,                *    On Appeal from the United
                                    *    States District Court
     v.                             *    for the Eastern District
                                    *    of Missouri.
Denis J. O'Brien,                   *
                                    *
          Appellant.                *
                                    *
     _____                  *
                                    *
No. 02-3799EM                       *
_____                       *
                                    *
In re Denis J. O'Brien,             *
                                    *
          Debtor.                   *
                                    *
-----------------------------------    *

                       *

Nicholas Valner and Kenneth Sidney   *
Roberts, as Executors of the Will of   *
George Harrison,                *
                       *
       Appellants,         *
                       *
   v.                   *
                       *
Denis J. O'Brien,         *
                       *
       Appellee.         *
                       *
                       *

    _____       *
                       *
   No. 02-3802EM     *  On Appeal from the United
    _____       *  States District Court
                       *  for the Eastern District
In re Denis J. O'Brien,     *  of Missouri.
                       *
       Debtor.          *
                       *
-----------------------------------  *
                       *
Nicholas Valner,         *
                       *
       Appellant,        *
                       *
   v.                   *
                       *
Kenneth Sidney Roberts, as Executor  *
of the Will of George Harrison, and   *
Denis J. O'Brien,         *
                       *
       Appellee.         *

_____

Submitted: September 12, 2003
Filed: December 12, 2003
_____

Before SMITH, RICHARD S. ARNOLD, and BEAM, Circuit Judges.
_____

RICHARD S. ARNOLD, Circuit Judge.

This is a bankruptcy case. The debtor is Denis J. O'Brien. He had been business manager for George Harrison.[1] Mr. Harrison objected to Mr. O'Brien's discharge in bankruptcy, and the Bankruptcy Court dismissed the objection on the ground that Mr. Harrison had willfully disobeyed an order to submit himself to deposition. This dismissal was with prejudice, so the discharge was granted. On appeal, the District Court reversed, holding that the Bankruptcy Court had abused its discretion. We respectfully disagree, and reverse the judgment of the District Court, reinstating that of the Bankruptcy Court.

I.

In 1996, Mr. Harrison obtained an $11.7 million judgment against Mr. O'Brien, Mr. Harrison's former business manager. In July 2000, Mr. O'Brien filed for bankruptcy and sought to have the judgment debt discharged. In January 2001, Mr. Harrison filed an adversary proceeding objecting to the discharge, pursuant to 11 U.S.C. § 727.

_____

[1]Mr. Harrison has died, and Nicholas Valner and Kenneth Sidney Roberts are now parties to this case as executors of his estate.

On February 1, 2001, the debtor served his first notice to depose Mr. Harrison and scheduled the deposition for February 26, 2001, in St. Louis, Missouri. Appendix 367. Four days before the deposition was set to occur, Mr. Harrison moved for a protective order to avoid the deposition, claiming he had no personal knowledge relevant to his own complaint objecting to the discharge. App. 34. At a hearing held on February 26, the Bankruptcy Court denied Mr. Harrison's motion without prejudice to an opportunity for him to amend it. App. 57. One month later, on March 26, the Court denied Mr. Harrison's amended motion after another hearing on the matter. App. 157, 193.

Before the Court's first order, Mr. Harrison sought the grant of another protective order to avoid a live deposition in St. Louis. During a hearing held April 19, Mr. Harrison cited several reasons, including personal security concerns and a vague reference to health issues, to support his claim that traveling to St. Louis from the United Kingdom, his place of residence, was impractical. App. 242-43. Although Mr. Harrison did not explain with any specificity the health issues he mentioned, he offered to the Court, subject to its admittance under seal, an affidavit from his physician that he claimed set forth sufficient reasons why he could not be deposed at that time. App. 255. Both the Court and Mr. O'Brien's attorney reviewed the affidavit off the record in chambers and returned it to Mr. Harrison. App. 339-40. After the Court refused to admit the affidavit under seal, Mr. Harrison withdrew it from the Court. App. 256, 339-40.

Following the April 19 hearing, the Court issued its first order compelling Mr. Harrison to appear for deposition no later than May 31, 2001, in London, England. App. 258-59. Mr. O'Brien noticed the deposition for May 29. App. 269.

On May 4, Mr. Harrison filed another motion for a protective order and to authorize the filing of documents under seal. App. 271, 288. The Court denied this motion on May 15. App. 288-89. Also on May 15, Mr. Harrison filed another

motion, this time seeking to modify the Court's order compelling him to appear for deposition no later than May 31. In this motion, Mr. Harrison claimed exigent circumstances existed to warrant the delay, and he stated that an affidavit from his physician, which Mr. Harrison offered to the Court subject to its admittance under seal, would explain the exigent circumstances. App. 282. The Court denied this motion on May 17, and the affidavit was not admitted into evidence. App. 294.

By letter dated May 22, 2001, Mr. Harrison notified Mr. O'Brien that he would not appear for the May 29 deposition in London "due to health reasons." App. 322. It was later revealed that Mr. Harrison had flown to the United States to attend his son's college graduation on May 29. App. 342-43.

On June 18, during a hearing before the Bankruptcy Court, Mr. Harrison again offered an affidavit from his physician to explain his health condition. This time, only the Court, and not Mr. O'Brien's attorney, reviewed the affidavit. When the Court again refused to admit the affidavit under seal, Mr. Harrison withdrew it from the Court. App. 347. After this hearing, the Court issued its second order, compelling Mr. Harrison to appear for deposition on July 10, 2001, in St. Louis. In this order, the Court warned Mr. Harrison that it would dismiss his case with prejudice if he failed to appear on this date. App. 350-51.

Mr. Harrison failed to appear for deposition on July 10 and, as it had warned it would do, the Court granted Mr. O'Brien's motion to dismiss with prejudice in an order dated July 13, 2001. App. 360, 363. Mr. Harrison appealed this judgment to the District Court, which concluded that the dismissal was an abuse of discretion and, therefore, reversed the Bankruptcy Court judgment. App. 381-82. Mr. O'Brien appealed the District Court's judgment to us.

We apply the same standard of review, on this second appeal as of right, as the District Court did. We review the Bankruptcy Court's legal conclusions de novo and

its findings of fact for clear error. Haden v. Pelofsky, 212 F.3d 466, 470 (8th Cir. 2000). The Bankruptcy Court's dismissal of an adversary proceeding (the form the objection to discharge took in this case) for failure to comply with a court order is reviewed for abuse of discretion. Schoffstall v. Henderson, 223 F.3d 818, 823 (8th Cir. 2000).

II.

Fed. R. Bankr. P. 7037(b), the bankruptcy counterpart of Fed. R. Civ. P. 37(b), authorizes a court to sanction a party who disobeys a discovery order with dismissal if the disobedience is willful and prejudices another party. Keefer v. Provident Life and Accident Ins. Co., 238 F.3d 937, 940 (8th Cir. 2000). In the context of Rule 37 motions, a court may find willful disobedience sufficient to support dismissal when a party employs stall tactics and disregards court orders. Schoffstall, 223 F.3d at 824.

The Bankruptcy Court concluded that Mr. Harrison's failure to appear for the two court-ordered depositions was willful disobedience. App. 360. The record supports this conclusion. This case raises an unusually sharp conflict between deep personal concerns and the demands of the law. For that reason, we choose to explain our holding fully. We focus on the two orders of the District Court, neither of which was obeyed, directing Mr. Harrison to appear for deposition, the first time in London, and the second time in St. Louis. As we have explained above, Mr. Harrison took the position, at a hearing on April 19, that it was not practical to travel to St. Louis from the United Kingdom to have his deposition taken. Reasons of health, among others, were assigned to support this position, but no specifics were given in open court. Instead, a declaration of Ian D. Hay, M.D., was offered, but only on the condition that it be received under seal. The declaration stated that Dr. Hay was a Professor of Medicine at the Mayo Clinic in Rochester, Minnesota, and went on as follows:

2. I am Mr. George Harrison's physician.

[3.]    I have had the privilege of looking after the health of Mr. Harrison since August 4, 1997, and most recently dismissed him from St. Marys Hospital (a Mayo hospital) in Rochester on April 2, 2001, after a stay of twelve days.   Since Mr. Harrison's departure from St. Marys Hospital, I have remained in regular contact with him to provide input on his further medical management and the supervision of his medical care.

[4.]    I am in no doubt that at the present time, because of his current medical condition, it would be advisable for Mr. Harrison to avoid speaking, particularly in the circumstances of a court or similar proceeding in which he would be required to give testimony.   Mr. Harrison continues to undergo medical treatments, and I cannot at this time predict when his condition will improve to the point that he could participate in such a proceeding without serious risk to his health.

Appellee's App. 45-46.

We note several important things about this declaration.  First of all, it does not reveal the disease or condition from which Mr. Harrison was suffering.  It simply states, in conclusory fashion, that, in the opinion of the physician, it would not be advisable for Mr. Harrison to speak, or give testimony, because of his current (unspecified) medical condition.   Second, and perhaps more important, the declaration never got into evidence.  It was viewed, off the record, by the Bankruptcy Court and by opposing counsel, but the declaration was offered only on the condition that it be received under seal.  The Bankruptcy Court denied this motion, and it is not argued on appeal that the Court, in this respect, abused its discretion.  Accordingly, for purposes of appellate review, the declaration has to be disregarded, even assuming it would have been sufficient to convince the Bankruptcy Court.  It was not part of the record before the Bankruptcy Court.  It did somehow become part of the record

in the District Court, but that Court, like this one, is an appellate court in this type of proceeding. It is without authority to consider a matter that was not properly before the trial court.

So far, there is no fault to find with what the Bankruptcy Court did. Following the April 19 hearing, it issued an order compelling Mr. Harrison to appear for deposition no later than May 31, 2001, the date to be selected by the opposing side. May 29 was selected for the date. The location was to be in London, in deference to Mr. Harrison's wishes.

As noted above, on May 22 Mr. Harrison notified the opposing party that he would not appear for deposition in London on May 29, "due to health reasons." App. 322. Instead, Mr. Harrison traveled to the United States to attend his son's college graduation. It is perfectly true, as the District Court observed, that it is much less stressful to attend the graduation of one's child than to be deposed. However, attending the graduation did involve two flights across the Atlantic Ocean. If we assume (a fact not of record) that Mr. Harrison flew in a private plane, not a commercial one, such travel is still not without stress. When we add to this the fact that it was not until later that counsel for Mr. Harrison revealed where his client had been at the time of the ordered deposition, we can understand why the Bankruptcy Court regarded the allegations concerning his health with some skepticism. It was for that Court, in the first instance, not the District Court or this Court, to assess the relative stressfulness of the deposition in London, on the one hand, and the travel to the United States for the graduation, on the other. We believe the conclusion reached by the Bankruptcy Court was within permissible limits.

Thereafter, the Bankruptcy Court held another hearing. Again, representations with respect to Mr. Harrison's health were made by his lawyers. Another declaration of Dr. Hay was offered, this one a good deal more detailed. The declaration stated, in part, as follows:

2. I am Mr. George Harrison's physician.

3. I have a specialty in treating patients with cancer. In 1997, Mr. Harrison underwent surgery for a malignancy. That surgery involved removal of a portion of one of Mr. Harrison's lungs. I was involved with treating Mr. Harrison for that procedure and for follow-up treatments.

4. In March 2001, I discovered that Mr. Harrison was suffering from another malignancy. In late March, another surgery was performed and more of Mr. Harrison's lung was removed. Following the surgery, Mr. Harrison remained in the hospital for twelve days.

5. Mr. Harrison is currently undergoing post-surgical treatment and therapy under my direction. It is uncertain how long this treatment and therapy will continue; it will depend upon Mr. Harrison's condition. This type of treatment is both physically and emotionally debilitating to cancer patients and can interfere substantially with their ability to function mentally and physically in situations requiring concentration or circumstances imposing stress. In my medical opinion, Mr. Harrison will not be well enough to participate in any sort of meeting or proceeding which would be stressful or require him to devote substantial thought or attention to issues in a legal proceeding for at least the next 45 days or longer. The debilitating effects of the ongoing treatment and therapy will prevent Mr. Harrison from participating meaningfully in such events. Forcing Mr. Harrison to participate in such a meeting or proceeding would pose a serious risk to Mr. Harrison's recovery at the present time.

Appellee's App. 97.

This declaration might well have been sufficient to convince us, and perhaps the Bankruptcy Court itself, had it been properly before that Court. However, like the first declaration, it was offered only on the condition that it be received under seal. When the Bankruptcy Court exercised its discretion not to receive the declaration under these conditions, it was withdrawn from the Court, by direction of the client. Again, it is not claimed that refusing to file the declaration under seal was an abuse of discretion. Perhaps more seriously, the declaration was never shown to the opposing side. It would have been a violation of the Due Process Clause of the Fifth Amendment for the Bankruptcy Court to consider it.

Even then, the Court did not impose any sanctions. It gave Mr. Harrison another chance, instructing him to appear for deposition on July 10, 2001, in St. Louis, and clearly warned him that the case would be dismissed with prejudice if this order was not obeyed. Mr. Harrison failed to appear, and his adversary proceeding was thereupon dismissed with prejudice.

All of this can be viewed as unfortunate. Mr. Harrison had evidence from which a court could well conclude that the deposition should be postponed, but he never properly presented this evidence to the Bankruptcy Court. This was a personal choice, which he had the power to make. As a famous person, he well knew that, if the declarations of Dr. Hay were filed with the Court in the ordinary manner, they would be spread abroad in the public prints. Most people would not want this kind of information about their health made public. We must remember, however, that Mr. Harrison had himself, by filing the adversary proceeding, invoked the processes of the Bankruptcy Court. He was bound to obey the orders of that Court, absent a good reason, properly presented. No such reason was properly presented, and therefore, whatever might have occurred otherwise, the litigant must bear the legal consequences of his action. The law did not compel the Bankruptcy Court to dismiss the adversary proceeding with prejudice, but it did permit it to do so. The finding of

willful disobedience was not clearly erroneous, and our duty is to review this finding on the basis of the record properly before the trial court.

In order to sustain the sanction of dismissal with prejudice, a finding of prejudice to the opposing party from the failure to appear for deposition is also required.

A finding of "prejudice" under Rule 37(b) is proper if the failure to make discovery impairs an opponent's ability to determine the factual merits of a party's claim. Avionic Co. v. General Dynamics Corp., 957 F.2d 555, 559 (8th Cir. 1992). Mr. Harrison's failure to appear for two court-ordered depositions impaired Mr. O'Brien's ability to explore the validity of Mr. Harrison's objection to the discharge. Thus, we conclude Mr. Harrison's conduct "prejudiced" Mr. O'Brien as the term is used in the context of Rule 37(b). Mr. Harrison claims that no prejudice could have occurred, because he had no knowledge of relevant facts. Thus, the deposition would not have done Mr. O'Brien any good. We believe the Bankruptcy Court was within its rights in rejecting this position. The sworn testimony of a party, especially a party who occupies the position of a plaintiff, will hardly ever be so irrelevant that it should be dispensed with on that party's mere say-so. Here, the objection to discharge was based on the theory that the debtor had committed fraud on the Bankruptcy Court. The debtor, in turn, had filed a motion for sanctions, claiming that the assertion of fraud on his part was completely without basis. To ask the person charging fraud, here Mr. Harrison, what he knew about his own accusation could hardly be pointless. Mr. Harrison asserted that he in fact knew nothing, that everything relevant to the case was within the knowledge of his lawyers. Perhaps this was true, but the assertion was subject to being tested by oral examination. We reject the contention that Mr. O'Brien was not prejudiced by the failure of the opposing party to submit himself to deposition.

## III.

Though dismissal under Rule 37 is an admittedly harsh sanction, its application "is entrusted to the sound discretion of the [trial] court." Avionic Co., 957 F.2d at 558, citing National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 643 (1976). Though a less onerous sanction may have been available, the Bankruptcy Court was not constrained to impose it. Keefer, 238 F.3d at 941. Thus, even if this Court would have imposed a less onerous sanction, we cannot substitute our judgment for that of the Bankruptcy Court, and we limit our review to whether the evidence supports the chosen sanction. Boogaerts v. Bank of Bradley, 961 F.2d 765, 768 (8th Cir. 1992).

We conclude that the Bankruptcy Court did not abuse its discretion in granting the Rule 37 motion to dismiss. The conduct of Mr. Harrison rose to the level of willful disobedience, and once this had been determined, the Bankruptcy Court's selection of a proper sanction, including dismissal, was within its discretion. Avionic Co., 957 F.2d at 558.

## IV.

The judgment of the District Court is reversed, and this cause is remanded to that Court with instructions to enter judgment affirming the order of the Bankruptcy Court.

It is so ordered.

_____