494

Charles BISHOP, Plaintiff,

v.

CITY OF MACON, et al., Defendants.

No. 5:94–CV–467–3 (WDO).

United States District Court,
M.D. Georgia,
Macon Division.

Oct. 21, 1999.

Harlan S. Miller, III, Jacqueline Danette Joslyn, Atlanta, GA, for plaintiff.

Thomas F. Richardson, O. Hale Almand, Jr., Roy Wilson Griffis, Jr., Macon, GA, for defendants.

## ORDER

OWENS, District Judge.

The Court now issues this order prohibiting Defendant James Avera from introducing evidence at trial from Warren Plowden and Ben Hubbard, and from calling them as witnesses.

At issue is whether Defendant Avera may call Warren Plowden and Ben Hubbard as witnesses to testify at trial as to conversations they had with Defendant Avera regarding the removal of Plaintiff Charles Bishop from the office of Deputy Chief of Police of the Macon Police Department. On May 6, 1992, attorney Warren Plowden met with Defendant Avera and Macon city attorney Joan Harris to discuss whether Avera could remove Bishop from the position he held as Deputy Chief of Police. Plowden followed up this meeting with a letter to Chief Avera dated May 13, 1992. The letter recounted the conversation and legal advice given to Chief Avera. Mayor Tommy Olmstead and Joan Harris also received copies of the letter. On January 26, 1994, Warren Plowden again met with Chief Avera to discuss Bishop's position as Deputy Chief. Joan Harris attended the meeting, as did Ben Hubbard, the Personnel Director for the City of Macon. As a result of this meeting and at the request of Chief Avera, Mr. Plowden drafted a letter dated February 7, 1994, informing Bishop that he would be transferred to a Captain position.

Plaintiff filed his complaint on November 15, 1994. In accordance with Federal Rule of Civil Procedure ("F.R.C.P.") 33, the Plaintiff served interrogatories on Chief Avera. These interrogatories were received by May 1, 1995. Interrogatory No. 10 inquired of Avera:

> Did you have any conversations with Ben Hubbard between December 1, 1993 and September 1, 1994 in which you discussed your desire to remove plaintiff from his position as Deputy Chief? If so, please state with particularity the nature of those conversations, the dates and times of those conversations, and the action you took, if any, as a result of each conversation.

Defendant Avera answered the interrogatory as follows:

Defendant Avera has no recollection of any conversations with Ben Hubbard as described in Interrogatory No. 10.

Interrogatory No. 14 inquired of Avera:

Did you discuss with anyone, other than the people mentioned in your response to Interrogatory No. 10, your desire to remove plaintiff from his position of Deputy Chief prior to doing so? If so, please list each person you spoke to, the dates and times of those conversations, and the nature of each conversation.

Defendant Avera responded to Interrogatory No. 14 as follows:

Defendant Avera has no recollection of a discussion or discussions regarding his intent to remove Plaintiff from his position as Deputy Chief prior to taking such action. Defendant Avera may have had discussions regarding Plaintiff's performance as Deputy Chief prior to removing Plaintiff as Deputy Chief. If any such conversations took place, Defendant Avera has no current recollection regarding with who they were with, when they occurred or what was said.

Defendant Avera's attorney argues that the first time he was informed about the communications between Avera and Ben Hubbard and Warren Plowden was on either August 1, 2, or 3, 1999. He claims this information was relayed to him, by a city of Macon attorney. Defendant Avera supposedly only vaguely remembered having these conversations after his attorney again questioned him on the matter. Defendant Avera's attorney then contacted the Plaintiff's attorney on August 3, 1999, and this was the first time that the Plaintiff's counsel was informed that discussions involving Chief Avera took place regarding Deputy Chief Bishop.[1] More than four years transpired between when Defendant Avera first denied having any conversations with Plowden and Hubbard, and when Avera's attorney first suggested to plaintiff's counsel that Plowden and Hubbard might have information helpful to Defendant Avera. The case is scheduled to go to trial the week of November 8, 1999.

Federal Rule of Civil Procedure 26(e)(2) states:

A party who has made a disclosure under subdivision (a) or responded to a request for discovery with a disclosure or response is under a duty to supplement or correct the disclosure or response to include information acquired if ordered by the court or in the following circumstances: ...

(2) A party is under a duty seasonably to amend a prior response to an interrogatory, request for production, or request for admission if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

F.R.C.P. 26. Defendant Avera failed to correct his Responses to Interrogatories 10 and 14 in light of the new information.

■ Defendant Avera failed to disclose the identities of Warren Plowden and Ben Hubbard under his response to Interrogatory No. 14 as people with whom he had conversed regarding the removal of the Plaintiff from the position of Deputy Chief. Defendant Avera also failed to disclose the facts regarding the January 26, 1994 conversation he had with Ben Hubbard regarding the Plaintiff. Even if it is to be believed that Defendant Avera did not have any recollection of such events, his legal counsel had ample opportunity to discover the information which was somehow later "found" by a Macon city attorney in August of 1999.

---

1. Defendant Avera argues that Ben Hubbard was identified as a person with knowledge in the Defendants' Disclosures attached to the Scheduling and Discovery Order as Attachment "B," filed on February 6, 1995, and therefore Plaintiff could have deposed him. Benjamin Hubbard was identified in Attachment "B" as a person "[k]nowledgeable about Plaintiff's grievances and unfair treatment requests; Plaintiff's charge of race discrimination filed with the EEOC; Plaintiff's claims regarding his vacation pay." The Court finds that this did not, as Defendant Avera suggests, put the Plaintiff on notice about any information Ben Hubbard might have regarding discussions with Defendant Avera about removing the Plaintiff from the position of Deputy Chief of Police.

The primary purpose of liberalized civil discovery rules is to prevent surprise to a litigant's opponent. If this Court were to allow Defendant Avera to use the proposed testimony at trial, it would cause a situation where the Plaintiff would be subjected to unfair surprise. *See Davis v. Marathon Oil Company,* 528 F.2d 395, 403 (6th Cir.1975) (affirming a district court's refusal to allow witnesses to testify because their names had been furnished in supplemental answers to interrogatories only three days before trial when the case had been pending for over two years and in spite of the suggestion to the court that the party had just "discovered" the witnesses). As the *Davis* court noted: "[r]easonable diligence would have disclosed the additional witnesses far in advance of trial." *Id.* This Court believes that in the case *sub judice,* reasonable diligence would have disclosed the witnesses in question far in advance of trial, and therefore they should not be used at trial. *See Malautea v. Suzuki Motor Co.,* 987 F.2d 1536, 1542 (11th Cir. 1993) (holding that district courts have broad powers under the rules of discovery to impose sanctions for a party's failure to abide by court orders).

The Court, mindful of the years that Defendant Avera had to "discover" this information, does not believe that Plaintiff should be prejudiced by Avera's delay in presenting this evidence. The Court finds that the failure to disclose as required was not harmless. Defendant Avera either had the information or had the ability to obtain the information from his attorneys, and only communicated this to the Plaintiff's counsel on August 3, 1999.

The Court **HEREBY ORDERS** that Defendant Avera shall not present the testimony of either Warren Plowden or Ben Hubbard at trial, nor shall he present evidence regarding their conversations with Defendant Avera which occurred on May 6, 1992 and January 26, 1994.