[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No.12-16006
Non-Argument Calendar
_____

D.C. Docket No.  4:11-cv-00450-RH-CAS

ROBERT BARNHART,

Plaintiff-Appellee,

versus

LAMAR ADVERTISING COMPANY,

Defendant,

THE LAMAR COMPANY, LLC,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____
(July 15, 2013)

Before HULL, JORDAN, and COX, Circuit Judges.

PER CURIAM:

The Lamar Company, LLC (Lamar) challenges on appeal the district court's denial of its motion for attorney's fees and costs.  After review, we affirm.

## I.

Robert Barnhart used to work for Lamar, a company that builds and maintains billboards.  (Dkt. 25 at 2.)  In September 2011, Barnhart sued Lamar, alleging that Lamar violated the Florida Whistleblower Act, Fla. Stat. §§ 448.101–.105.  (Dkt. 1.)  In his third amended complaint (the operative pleading), Barnhart essentially alleges that his supervisor told him to poison trees that blocked Lamar's billboards.  (Dkt. 25 at 3–5.)  Barnhart eventually informed his supervisors in July 2011 that he refused to continue this practice.  (*Id.* at 5.)  As a result, he alleges that he "received written notice from . . . Lamar that he had been terminated." (*Id.*)[1]

Other pertinent facts emerged during the litigation.  One such fact was that before he filed suit or complained about the tree poisoning, Barnhart suffered a back injury in June 2011.  (Dkt. 31 at 4–6.)  As a result of the injury, he filed petitions for workers' compensation benefits in which he claimed that he was disabled.  (*Id.* at 7.)  He also repeatedly told Lamar that he could not return to his

---

[1] This allegation turned out to be false—Lamar never sent him a written termination letter before he filed this action.

2

former job.  (*Id.* at 7–8.)  In this case, however, Barnhart takes the opposite position—he could return to work, and Lamar fired him anyway in retaliation for complaining about the tree poisoning.  (Dkt. 32 at 16–17; Dkt. 37 at 7–9.)

Lamar moved for summary judgment, and so did Barnhart.  (Dkts. 31 & 32.) The district court granted summary judgment in favor of Lamar and denied summary judgment for Barnhart.  (Dkt. 68.)  It reasoned that Barnhart had failed to prove that Lamar fired him because of his tree-poisoning complaint and not because of his inability to return to his former job.  (*Id.* 68 at 5–7.)  Soon thereafter, Lamar moved for attorney's fees.  (Dkt. 73.)  The district court denied the motion.  (Dkt. 76.)  Lamar appeals.[2]

## II.

On appeal, Lamar argues that the district court erroneously denied its motion for an award of attorney's fees.  Lamar's motion sought an award of fees against Barnhart's counsel under 28 U.S.C. § 1927.  The motion also sought, in the alternative, an award of fees against Barnhart personally under Fla. Stat. § 448.104. Lamar contends that the cost of defense exceeded $180,000.

---

[2] On January 3, 2013, we issued a jurisdictional question to the parties asking whether there is subject-matter jurisdiction.  We are satisfied that subject-matter jurisdiction exists under 28 U.S.C. § 1332.  The record indicates that the parties are completely diverse.  Lamar LLC's sole member is Lamar Media Corp., which is incorporated under the laws of Delaware with its principal place of business in Louisiana.  And, Barnhart is a citizen of Florida.

Both parties agree that we review this issue for an abuse of discretion—a highly deferential standard of review, *see United States v. Frazier*, 387 F.3d 1244, 1259 (11th Cir. 2004) (en banc).  A district court abuses its discretion if it applies an incorrect standard or bases its decision on findings of fact that are clearly erroneous.  *See Peer v. Lewis*, 606 F.3d 1306, 1311 (11th Cir. 2010).

### A.

Lamar argues that the district court's order does not provide enough explanation to allow for meaningful appellate review, and for that reason, we should vacate the court's order and remand the case.  But, the court explained its reasons for denying fees.  After considering the facts, the court determined that "[a]n employee and his attorney could reasonably conclude under these circumstances that there were good grounds to pursue a whistleblower claim." (Dkt. 76 at 4.)  To be sure, the order is concise, but it provides enough analysis for us to conduct a meaningful review.  *Cf. McMahan v. Toto*, 256 F.3d 1120, 1128 (11th Cir. 2001) (reviewing a district court's denial of fees despite the fact that the district court said "simply that [the parties] have not unreasonably extended the proceedings"(internal quotation marks omitted)).

4

B.

Lamar's next argument is that the court erroneously denied its request for fees under 28 U.S.C. § 1927.  Section 1927 provides, in relevant part, that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927. Congress designed § 1927 "to sanction attorneys who 'willfully abuse the judicial process by conduct tantamount to bad faith.'"  *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003) (quoting *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1544 (11th Cir. 1993)).  For a court to justify an award of sanctions under § 1927, three conditions must be satisfied: (1) the attorney must engage in unreasonable and vexatious conduct, (2) that conduct must have multiplied the proceedings, and (3) the amount of sanctions must bear a financial nexus to the excess proceedings.  *Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997).

Lamar argues that the district court abused its discretion in denying fees under § 1927 because it "apparently" failed to apply the correct legal standard. (Appellant's Br. at 15.)  We disagree.  Our review of the court's order does not

5

reveal any application of an incorrect legal standard.  And, the order correctly lays out the law concerning an award of fees under § 1927.  (*See* Dkt. 76 at 2.)

But in any event, the district court did not clearly err in finding that Barnhart and his counsel had "good grounds" to pursue this claim.  (*Id.* at 4.)  That is, counsel did not engage in unreasonable and vexatious conduct because this claim was not frivolous, and this claim did not become frivolous during the course of the litigation.

An attorney engages in unreasonable and vexatious conduct when the conduct is "so egregious that it is tantamount to bad faith."  *Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1282 (11th Cir. 2010) (quoting *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2007)) (internal quotation marks omitted).  An attorney acts in bad faith when he "knowingly or recklessly pursues a frivolous claim."  *Peer*, 606 F.3d at 1314.  Negligent conduct is not enough.  *Amlong & Amlong,* 500 F.3d at 1241–42.  "Determinations regarding frivolity are to be made on a case-by-case basis."  *Sullivan v. Sch. Bd. of Pinellas Cnty.*, 773 F.2d 1182, 1189 (11th Cir. 1985).  A case may be weak, but as long as it is not "without circumstantial foundation," it is not frivolous.  *Hudson v. Int'l Computer Negotiations, Inc.*, 499 F.3d 1252, 1265 (11th Cir. 2007) (quoting *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1187 (11th Cir. 2005)).  When deciding if a claim is

6

frivolous, we ask "whether th[e] evidence was so obviously deficient that [the party] and her counsel should be forced to pay . . . attorney's fees and expenses." *Cordoba*, 419 F.3d at 1180. Moreover, whether an attorney acts in bad faith is a question of fact that we review for clear error. *See Malautea*, 987 F.2d at 1544 (concluding that the district court did not clearly err in finding that the attorney had acted in bad faith).

Here, we cannot say that the court clearly erred in finding that Barnhart's counsel did not act in bad faith because he had "good grounds" for bringing and pursuing this claim under the Florida Whistleblower Act. (Dkt. 76 at 4.) Under the Act, "[a]n employer may not take any retaliatory personnel action against an employee because the employee has . . . [o]bjected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation." Fla. Stat. § 448.102.

There was a good faith basis for bringing this claim. As the district court points out, no one seems to dispute that Lamar poisoned trees. (Dkt. 76 at 4.) Indeed, Barnhart participated in the poisoning, then objected to it, and then Lamar "replaced" him after his complaint. (Dkt. 31 at 8.)

We cannot conclude that the district court clearly erred in finding that there was a good faith basis for pursuing this claim. We acknowledge that Barnhart filed

7

workers' compensation petitions in which he claimed that he was medically unable to do his former job and repeatedly told Lamar that he did not think he could return to his former job.  Like the district court, we too find this to be a "curious" position.  (*See* Dkt. 68 at 6.)  But it is not frivolous.  Barnhart reasonably argued that Lamar might permanently assign him to a light-duty position and that he was not permanently reassigned in retaliation for his complaint about the tree poisonings.  (Dkt. 73 Ex. A, at 15, 26, 28–29.)  This argument does not entirely lack a factual basis.  Lamar's Vice President of Human Resources said that light-duty positions are offered to employees on a case-by-case basis and that Lamar does not have a written policy on whether a disabled employee may receive a light-duty position.  (Dkt. 74 Ex. A, at 14.)

In addition, conflicting medical testimony existed—some of Barnhart's doctors said he could not return to work and at least one of his doctors (Dr. Carr) said he could return to work.  Before the district court, Barnhart argued that while he was not aware of his doctor's instruction that he could return to work (he first received this information through discovery), Lamar was aware of it and still fired him because of his complaint about the tree poisoning, (*see* Dkt. 73 Ex. 1, at 16–17, 19.)  According to Barnhart, Lamar's workers' compensation carrier received

8

Dr. Carr's record, and therefore Lamar knew there was evidence that Barnhart could return to work. (*Id.* at 8, 16–17, 27.)

Barnhart lost at summary judgment because he could not prove that Lamar permitted employees to permanently work in light-duty assignments or that Lamar knew that, arguably, he could return to work at his former position. (Dkt. 68 at 5–7.) But that does not mean that he "willfully abuse[d] the judicial process" in pursuing his claim. *See Schwartz*, 341 F.3d at 1225. Indeed, "[s]omething more than a lack of merit is required for § 1927 sanctions." *McMahan*, 256 F.3d at 1129. On the record before us, we cannot conclude that the district court abused its discretion in failing to find bad faith.

Further, the incorrect allegation in Barnhart's complaint that he received a termination letter, while an indication of sloppy pleading, does not amount to bad faith. Lamar fails to point us to any convincing evidence that suggests that the inclusion of the false allegation was more than simple negligence. *See Schwartz*, 341 F.3d at 1225 (noting that § 1927 "is not about mere negligence"). Lamar also contends that Barnhart's counsel acted in bad faith by engaging in frivolous motions practice and making unnecessary discovery demands. Lamar fails, however, to indicate which motions or demands were frivolous and exactly why those motions or demands lacked a legal or factual basis. *See Doe v. Moore*, 410

9

F.3d 1337, 1349 n.10 (11th Cir. 2005) ("[W]e require appellants to not only state their contentions to us, but also to give the reasons for them, with citations to authorities and parts of the record on which the appellant relies." (internal quotation marks omitted)).

For these reasons, we cannot conclude that the district court abused its discretion in denying an award of fees under § 1927.

## C.

Finally, Lamar argues that the court erred in denying an award of fees against Barnhart personally under Fla. Stat. § 448.104.  Section 448.104 says that "[a] court may award reasonable attorney's fees, court costs, and expenses to the prevailing party."  Fla. Stat. § 448.104.  Awarding fees under § 448.104 is within the court's discretion.  *New World Commc'ns of Tampa, Inc. v. Akre*, 866 So. 2d 1231, 1235 (Fla. Dist. Ct. App. 2003).

Lamar makes three arguments in support of the contention that the district court abused its discretion in denying fees under Fla. Stat. § 488.104.  First, it contends that the district court erred in not considering any of the factors laid out in *Blanco v. Transatlantic Bank*, No. 07-20303-CIV, 2009 WL 2762361, at \*2 (S.D. Fla. Aug. 31, 2009).  However, in its motion for attorney's fees, Lamar says that the "consideration of these neutral factors is not mandatory upon this Court."  (Dkt.

10

73 at 12.)   Lamar cannot now argue that the district court erred in failing to consider the *Blanco* factors when it told the district court that it did not have to consider those factors.[3]  *See Ford ex rel. Estate of Ford v. Garcia*, 289 F.3d 1283, 1293–94 (11th Cir. 2002) ("It is a cardinal rule of appellate review that a party may not challenge as error a ruling or other trial proceeding invited by that party." (quoting *United States v. Ross*, 131 F.3d 970, 988 (11th Cir. 1997))).

Lamar next argues that the district court wrongly applied the heightened standard from *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 422, 98 S. Ct. 694, 701 (1978), which requires a defendant seeking attorney's fees to prove that the plaintiff's claim was "frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so."  But this argument fails because the district court's order expressly says that it assumes that Lamar does not have to meet the *Christianburg* standard.  (Dkt. 76 at 3.)

Third, Lamar contends that the court clearly erred in denying fees.  We see no clear error for the same reasons that we could not conclude that the court erred

---

[3] But assuming for the sake of argument that the district court should have applied the *Blanco* factors, the order implicitly addresses three of the five non-exhaustive factors.  The district court concluded that Barnhart's claim was not frivolous (*Blanco* factor #1), that awarding fees in this case would frustrate the purposes of the Florida Whistleblower Act (*Blanco* factor #4), and that Barnhart did not act in bad faith (*Blanco* factor #5).  (*See* Dkt. 76 at 4.)

in denying fees under § 1927.  In short, the court's decision to deny fees was not an abuse of discretion.

### III.

This is a close case, but one in which we are heavily guided by the standard of review.  *See Frazier*, 387 F.3d at 1259 ("[U]nder the abuse of discretion standard of review there will be occasions in which we affirm the district court even though we would have gone the other way had it been our call.").  We find no abuse of discretion.

AFFIRMED.